ELSIE T. MORRISON, Employee, Plaintiff, v. BURLINGTON INDUS-
TRIES, Employer, and LIBERTY MUTUAL INSURANCE COMPANY,
Carrier, Defendants

No. 7910IC1167

(Filed 3 June 1980)

Master and Servant § 68– workers' compensation – disability to work – portion
caused by occupational disease – right to compensation for total disability

　　If an employee's incapacity to work is total and that incapacity is occa-
sioned by a compensable injury or disease, the employee's incapacity to work
cannot be apportioned to other pre-existing or latent illnesses or infirmities,
nor may the entitlement to compensation be dismissed for such conditions.
Therefore, where the Industrial Commission found that plaintiff was totally
disabled to work, that 55% of her disability was due to her occupational
disease, and that 45% of her disability was due to physical infirmities not
related to her work, the Commission erred in holding that plaintiff was
entitled only to compensation for partial rather than total disability.

Chief Judge Morris dissenting.

Appeal by plaintiff from Full Industrial Commission order of 18 June 1979. Heard in the Court of Appeals 24 March 1980.

The record discloses that there were three initial hearings in this case. The first, before Commissioner Robert S. Brown, on 25 and 26 July 1977; the second before Deputy Commissioner Richard B. Conely on 18 November 1977; and a third before Deputy Commissioner Christine Y. Denson on 7 June 1978. At the conclusion of the third hearing, Commissioner Brown entered an order in which he found and concluded that plaintiff

was totally disabled for work due to chronic obstructive lung disease resulting from her exposure to cotton dust while in defendant's employ. He found her average weekly wage to be in the sum of $119.77, and awarded her compensation at the rate of $79.85 per week for the number of weeks provided by law or until such time as plaintiff has a change of condition. Upon review by the Full Commission, its order found and concluded that fifty-five percent of plaintiff's disability to work was due to her occupational disease and that forty-five percent of her disability was due to physical infirmities not related to her employment. Plaintiff's compensation was reduced to $43.92 per week.

*Davis, Hassell & Hudson, by Charles R. Hassell, Jr. and Robin E. Hudson, for the plaintiff appellant.*

*Teague, Campbell, Conely & Dennis, by C. Woodrow Teague and George W. Dennis III, for the defendant appellees.*

WELLS, Judge.

The sole issue presented in this appeal is whether the Industrial Commission erred as a matter of law in apportioning and reducing plaintiff's compensation for total disability. In order to address the question of law at issue, it is necessary to review the evidence upon which the Commission acted.

Plaintiff was employed in defendant Burlington Industries Mill in Erwin for twenty-seven years. She worked in the cotton spinning department. She last worked on 24 April 1975. At the July 1977 hearing, Henderson D. Mabe, Jr., M.D., testified for plaintiff that he has treated plaintiff since 1965. In January 1975, plaintiff was hospitalized under his treatment. He diagnosed recent upper respiratory infection superimposed on chronic bronchitis, diabetes controlled by diet, and suspected possible byssinosis with history of exposure to lint. In addition to her lung problem, she suffered from phlebitis of the left leg. She was unable to work at her job as of 24 April 1975. The leg problem would not have totally disabled her but was an added factor *in her disability.*

At the June 1978 hearing, Mario C. Battigelli, M.D., testified for defendants that he was a professor of medicine at the University of North Carolina and was one of the panel of physicians to whom the Industrial Commission refers claimants who make claims for byssinosis. He specialized in pulmonary diseases. He examined plaintiff on 8 April 1975. He filed a report following that examination which included a finding of "4. Chronic obstructive lung disorder, bronchitis in type, in cigarette smoker with aggravation on dust exposure" and a conclusion that "[s]he does not present cyclic disorder which would allow the diagnosis of byssinosis." At the hearing, Dr. Battigelli testified that:

> If the Commission should find that Mrs. Morrison is either totally or partially disabled, my opinion, satisfactory to myself to a reasonable degree of medical certainty, as to what percentage of her disability which can be traced or is due to her exposure to cotton dust is that it could be quite miniscule, if not negligible. With luck, between 0 and 20% in percentage terms.

> I suggested that she be relocated to a similar activity in a more sheltered environment, that is not only less exposure to cotton dust, but also not involving a static standing position or anything that was displeasing Mrs. Morrison.

At the November 1977 hearing, Herbert O. Sieker, M.D., testified for plaintiff that he was a professor of medicine at Duke University, specializing in chest and allergic diseases. He examined plaintiff in January 1977 and determined that plaintiff was suffering from severe respiratory disability, that cotton dust was a causitive factor in her lung disease, that she was disabled, and that her disability was due to her chronic lung disease. He estimated that somewhere between fifty and sixty percent of her disability was related to cotton dust exposure.

Commissioner Brown's order of 18 December 1978 contains the following pertinent findings and conclusions:

> 6. On 24 April 1975, plaintiff was totally disabled for work due to her chronic obstructive lung disease resulting

from her exposure to cotton dust while in defendant's employ and has since remained so disabled.

7. Plaintiff suffers from chronic obstructive lung disease, an occupational disease due to causes and conditions characteristic of and peculiar to her particular trade, occupation or employment in the textile industry. Her disease is not an ordinary disease of life to which the general public is equally exposed outside of such employment.

8. Due to the occupational disease suffered by plaintiff, she has no earning capacity in any employment for which she can qualify in the labor market.

* * *

*CONCLUSIONS OF LAW*

1. The compensable occupational disease from which plaintiff suffers is due to causes and conditions which are characteristic of and peculiar to her particular trade, occupation or employment and is not an ordinary disease of life to which the general public outside of such employment is equally exposed. G.S. 97–53(13).

2. As a result of her occupational disease plaintiff is disabled and has been so disabled from 24 April 1975. She is entitled to compensation at the rate of $79.85 per week for such disability for the number of weeks by law provided or until such time as plaintiff has a change of condition. G.S. 97–52; G.S. 97–29; G.S. 97–2(9).

The Full Commission order of 18 June 1979 contains the following pertinent entries:

...After reviewing all the competent evidence received in this case, it is the opinion of the Full Commission that while plaintiff does suffer from an occupational disease and is entitled to compensation, it is further the opinion of the Full Commission that plaintiff is not totally disabled by reason of such occupational disease. The Opinion and

Award heretofore filed in this case is therefore amended as follows:

*  *  *

(3) Finding of Fact No. 6, as the same appears on Page 4 of the Opinion and Award, is hereby stricken out in its entirety and there is substituted in lieu thereof the following:

6. In addition to her chronic obstructive lung disease, plaintiff suffers and has suffered for some time from phlebitis, varicose veins and diabetes. Such conditions constitute an added factor in causing her disability.

(4) Finding of Fact No. 8, as the same appears on Page 4 of the Opinion and Award, is hereby stricken out in its entirety and there is substituted in lieu thereof a new Finding of Fact as follows:

8. Due to the occupational disease suffered by plaintiff and due to her other physical infirmities, including bronchitis, phlebitis, varicose veins and diabetes, plaintiff has no earning capacity in any employment for which she can qualify in the labor market. Fifty-five percent of such disability is due to her occupational disease and 45 percent of such disability is due to her physical infirmities not related to her employment with defendant-employer.

(5) A new Finding of Fact is added immediately following Finding of Fact No. 9, as the same appears on Page 4 of the Opinion and Award, as follows:

10. As a result of the occupational disease giving rise hereto, plaintiff has sustained a 55 percent loss of wage-earning capacity or ability to earn wages. Her average weekly wage-earning capacity has been reduced by 55 percent of $119.77 or $65.87 per week. The

balance of her wage loss is not a result of her occupational disease.

(6) Conclusion of Law No. 2, as the same appears on Page 5 of the Opinion and Award, is hereby stricken out in its entirety and there is substituted in lieu thereafter a new Conclusion of Law as follows:

2. As a result of her occupational disease, plaintiff has sustained an average weekly wage loss of $65.87 and such temporary partial disability commenced 24 April 1975. She is therefore entitled to compensation at the rate of $43.92 per week for such temporary partial disability commencing 24 April 1975 and the payment of such compensation should continue until such time as plaintiff sustains a change of condition; provided, however, that such payments shall not exceed 300 weeks. G.S. 97-52; G.S. 97-30; G.S. 97-2(9).

As a result of the Full Commission's amendments to Commissioner Brown's order, the Commission has found that plaintiff is totally disabled from work, that her disability was in part caused by occupational disease compensable under the law and in part caused by other noncompensable illnesses, and therefore plaintiff is only entitled to compensation for partial, not total, disability. The Commission erred in this conclusion.

Our courts have historically and consistently held that the disability of the injured employee is to be measured by his capacity or incapacity to earn the wages he was receiving at the time of the injury and that loss of earning capacity is the criterion. *See, Ashely v. Rent-A-Car Co.*, 271 N.C. 76, 155 S.E. 2d 755 (1967) and cases cited therein. From the wording of the pertinent provisions of the statute it is clear that the Commission can only apportion when the claimant retains some capacity to work. G.S. 97-29 provides, ". . . where the incapacity for work resulting from injury is total, the employer shall pay or cause to be paid . . . to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of his average weekly wages. . . ." G.S. 97-30 pro-

vides, " ... where the incapacity for work resulting from the injury is partial, the employer shall pay ... to the injured employee during such disability, a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of the difference between his average weekly wages before the injury *and the average weekly wages which he is able to earn thereafter* ...." [Emphasis added.] In the case *sub judice*, the Comission's findings of fact clearly establish the link between plaintiff's occupational disease and her incapacity to work. Once that link is established, our law does not contemplate that the Commission shall act as a board of medical inquiry, assigning or proportioning a worker's incapacity to work to other discernable infirmities. If the worker's incapacity to work is total and if that incapacity is occasioned by a compensable injury or disease, the worker's incapacity to work cannot be apportioned to other preexisting or latent illnesses or infirmities, nor may the entitlement to compensation be diminished for such conditions. *Little v. Food Service,* 295 N.C. 527, 246 S.E. 2d 743 (1978); *Mabe v. Granite Corp.,* 15 N.C. App. 253, 189 S.E. 2d 804 (1972); *Martin v. Service Co.,* 17 N.C. App 359, 194 S.E. 2d 223 (1973), *disc. rev. denied,* 283 N.C. 257, 195 S.E. 2d 690 (1973); *Pruitt v. Publishing Co.,* 27 N.C. App. 254, 218 S.E. 2d 876 (1975), *rev'd on other grounds,* 289 N.C. 254, 221 S.E. 2d 355 (1976).

The Commission's findings that plaintiff was totally incapacitated for gainful employment and that she suffers from a compensable disease compel the conclusion that she is entitled to compensation for total incapacity as provided by law.

This matter is remanded to the Industrial Commission for entry of an order consistent with this opinion.

Reversed and remanded.

Judge PARKER concurs.

Chief Judge MORRIS dissenting.

Chief Judge MORRIS dissenting:

Morrison v. Burlington Industries

I do not disagree with the statement of the majority that "[i]f the worker's incapacity to work is total *and if that incapacity to work is occasioned by a compensable injury or disease,* the worker's incapacity to work cannot be apportioned to other pre-existing or latent illnesses or infirmities, nor may the entitlement to compensation be diminished for such condition." (Emphasis supplied.) Nor do I disagree with the holdings of the cases cited as supportive authority. I simply do not think the statement and the case have any applicability to the case before us.

In *Mabe v. Granite Corp.,* 15 N.C. App. 253, 189 S.E. 2d 804 (1972), the only case cited by the majority dealing with occupational disease, and the case closest to the one *sub judice,* this Court did affirm an order to the Industrial Commission awarding total disability benefits upon a finding of total incapacity for work *because* of silicosis. There the employee had worked as a stone cutter for the defendant for some 30 to 35 years. He terminated his employment with defendant in 1968 and thereafter filed a claim against defendant for compensation because of disability caused by silicosis. Medical testimony established that he was 40% disabled for employment "in his previous or any other occupation." His testimony was that he had not held regular employment since he quit working for defendant because, "due to a shortness of breath and a lack of strength, he can no longer perform hard labor." He had only a fifth grade education, could read a little, but could not "write much", and didn't "know nothing but hard labor" and could not get "a job like that." We said:

> Defendant contends that elements of age and poor education are factors which are beyond the control of an employer and cannot be considered in determining an employee's disability. The answer to this is that an employer accepts an employee as he is. If a compensable injury precipitates a latent physical condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable and no attempt is made to weigh the relative contribution of the accident and the pre-existing condition. 2 Larson, Workmen's Compensation Law, § 59.20, p. 88.109.

By the same token, *if an industrial disease renders an employee actually incapacitated* to earn any wages, the employer may not ask that a portion of the disability be charged to the employee's advanced age and poor learning on the grounds that if it were not for these factors he might still retain some earning capacity. (Emphasis supplied.)

15 N.C. App. at 256, 189 S.E. 2d at 807. In *Mabe,* the Court was not faced with the question now before us. There was no additional disease or physical condition totally unrelated to the employment which contributed in large measure to the incapacity. Here the majority of claimant's disability is due to factors other than her employment. In the mid sixties she went to Duke Hospital, "but not for a breathing problem." She was told she had bronchitis. She worked until 24 April 1975. She smoked about a pack and one-half of cigarettes a day. Along about 1967 she had a "a vein stripping in her leg" done at Duke Hospital. She did not recover as expected and had to return to the hospital, at which time it was discovered that she had diabetes. The doctors would tell her to stop smoking and she would stop and then start back and continued to smoke to the date of hearing. In addition to the phlebitis and severe venous deficiency in her lower extremities, diabetes, and bronchitis, claimant had had other illnesses, some involving surgical procedures. She had undergone a hysterectomy because of the presence of fibroid tumors in the womb. She had had tumors removed from both breasts and in 1953 had had cancer diagnosed. She had also had diagnosed left ventribular enlargement with a systolic ejection murmur.

Dr. Sieker testified that only 50 to 60 percent of her disability was due to cotton dust, and the rest was due to factors totally unrelated to employment. Dr. Battigelli testified that the percentage of her disability due to her employment was from 0 to 20 percent, "quite miniscule, if not negligible". These two medical experts clearly testified that claimant's incapacity *resulting* from occupational disease is not total. It is also clear that all of the evidence clearly showed that claimant did not actually become incapacitated *because* of byssinosis. When the General Assembly amended the Worker's Compensation Act to include specified occupational diseases, it did not, by so doing,

remove the requirement that compensation is payable only where there is causal connection between injury and employment. *See Duncan v. City of Charlotte*, 234 N.C. 86, 66 S.E. 2d 22 (1951).

In my opinion, the Worker's Compensation Act is not intended to require that employers provide general health insurance for employees whose disability stems from causes other than causes connected with and resulting from employment. This would be the result of the majority non-apportionment rule. *See* dissent by Clark, Judge, in *Pruitt v. Knight Publishing Co.*, 27 N.C. App. 254, 218 S.E. 2d 876 (1975), *reversed on other grounds*, 289 N.C. 254, 221 S.E. 2d 355 (1976). Nor do I think *Mabe* requires the result reached by the majority. It seems clear that G.S. 97-29 and G.S. 97-30 mandate that benefits are to be provided only for incapacity "resulting from the injury." This the full Commission did. Its facts are supported by the evidence and the facts found support the conclusions and the award.

I agree with the full Commission that claimant be compensated only for that portion of her disability which is related to and results from her employment.