WALTER HYATT, EMPLOYEE, PLAINTIFF v. WAVERLY MILLS, EMPLOYER, AND TRAVELERS INSURANCE COMPANY, CARRIER, DEFENDANTS.

No. 8110IC781

(Filed 16 February 1982)

1. **Master and Servant §§ 68, 69.1— evidence supporting finding of total disability**
    The Commission's findings as to plaintiff's total disability, as these terms are used in G.S. 97-2(9) and G.S. 97-55, were supported by the evidence. A doctor's testimony that plaintiff was totally disabled as of the date of trial supported the Commission's finding that plaintiff was permanently disabled as of the date of his retirement 18 months earlier, and the doctor's statement that plaintiff was disabled for "anything except sedentary occupation in a very clean environment" also supported the Commission's finding as plaintiff's age, education, training, and work experience did not suggest a reasonable probability that he could obtain employment in anything but a manual labor environment.

2. **Master and Servant § 69.2— onset of non-work-related diseases following work-related disablement— no affect in compensation**
    A doctor's testimony that he had diagnosed angina in plaintiff 11 months after plaintiff became disabled for work did not necessarily show that plaintiff's disability was due in part to angina. The onset of non-work-related diseases following work-related disablement does not affect in any way plaintiff's entitlement to compensation as of the date of his work-related injury.

3. **Master and Servant § 68— finding plaintiff's disability caused by occupation—supported by evidence—medical evidence sufficiently definite**

Based upon a doctor's diagnosis that plaintiff's lung dysfunction was probably caused by exposure to cotton dust in plaintiff's employment, and his determination that if there were other possible contributing agents or causes such other causes could not be quantified, the Commission was justified in finding the occupational exposure to be the sole cause of injury.

4. **Master and Servant § 71— computation of "average weekly wages"—methodology used fair**

The Commission's methodology used in determining plaintiff's "average weekly wages," as that term is used in G.S. 97-2(5), was fair and just to both parties where the Commission considered plaintiff's wages during a period when plaintiff was able to maintain steady employment as well as the 52 week period prior to the date of plaintiff's injury when he worked only a number of short days due to his weakened condition.

5. **Master and Servant § 95.1—validity of appeal from Commission—no error in denial of penalty award**

The Commission did not err in denying plaintiff's motion to dismiss defendant's appeal for failure to timely perfect it and to award plaintiff additional compensation for defendants' failure to pay plaintiff's award when due under G.S. 97-18 where defendants filed a "notice of protective appeal" which complied with one rule of the Commission but failed to comply with another rule of the Commission. The Commission waived the application of the rule with which defendants failed to comply, and the exercise of its discretion in such matters, absent abuse, is not reviewable by the courts.

APPEAL by defendants and cross-appeal by plaintiff from Industrial Commission. Opinion and award entered 23 February 1981. Heard in the Court of appeals 11 December 1981.

Plaintiff's claim for compensation for total disability due to occupational disease (byssinosis) was allowed by Deputy Commissioner Shuping. On appeal, the Full Commission adopted and affirmed the opinion and award. Defendants appealed from the award. Plaintiff cross-appealed from the denial of his motion for a ten percent increase in the award for defendants' failure to pay the award when due and from the Commission's failure to dismiss defendants' appeal.

The evidence upon which the award was made consisted of the testimony of plaintiff, Mr. Tom Murray, Personnel Administrator for defendant Waverly Mills, Donald Woolfolk, M.D. and Charles D. Williams, Jr., M.D.

Plaintiff testified that he was born on 15 August 1906, has no formal education, can neither read nor write, and is not licensed to operate a motor vehicle. Plaintiff began working in cotton mills in 1928 or 1929 and continued in that employment on a regular and continuing basis until he retired in 1968. During the years between 1928-29 and 1968, plaintiff worked in an environment containing a significant amount of cotton dust, which was at times very dusty. In 1953, plaintiff began to notice difficulty in breathing, fatigue, and chest pain. Plaintiff's symptoms were more severe at work. His symptoms gradually became more severe until, at age 62, he voluntarily retired from work in 1968. Plaintiff returned to work in 1976, worked for about nine months and then quit. He again returned to work on 21 February 1978, worked until 6 May 1978, and then stopped because his physician, Dr. Vinson, advised him not to work anymore. Plaintiff was first treated by Dr. Vinson in about 1963, for bronchitis and emphysema. Plaintiff started smoking cigarettes in 1960 or 1965, smoking between half a pack and a pack per day. He stopped smoking in the early months of 1979.

Dr. Williams testified that he examined plaintiff and took plaintiff's history on 29 May 1978. Dr. Williams' examination and test were reduced to a ten page report. In Dr. Williams' opinion, plaintiff is disabled for anything except sedentary occupation in a very clean environment and plaintiff's condition is not signficiantly reversible. Dr. Williams' diagnoses were that plaintiff had pulmonary emphysema, chronic bronchitis, byssinosis, generalized arteriosclerosis, suspected chronic prostatitis, obesity, postoperative bilateral inguinal herniorrhaphy, and possible diabetes mellitus. Plaintiff's lung condition is his primary problem and the primary reason for his diability. It was Dr. Williams' opinion that plaintiff's lung problems were probably caused by exposure to cotton dust. Dr. Wiliams stated that plaintiff's lung problems could or might have been causally related to cigarette smoking, but it was not possible to quantitate the relative contribution of the smoking and cotton dust factors.

Dr. Woolfolk first saw plaintiff in April of 1979, when he hospitalized plaintiff for unstable angina. Dr. Woolfolk also took plaintiff's history and examined him in relation to plaintiff's lung problems. Dr. Woolfolk stated that plaintiff was disabled to engage in work for gainful wages; that plaintiff's chronic lung

disease could have resulted in plaintiff's disability; that plaintiff's lung disease could be either byssinosis or emphysema, but that due to plaintiff's history of industrial exposure, emphysema was less likely; and that plaintiff's angina played a significant role in his present disability.

Mr. Murray testified as to plaintiff's wages and working conditions at Waverly Mills.

Based upon the stipulations of the parties and the evidence adduced at the hearings, Deputy Commissioner Shuping found plaintiff to be permanently and totally disabled as a result of chronic obstructive lung disease as of the date of plaintiff's retirement from work on 6 May 1978, and found that plaintiff's lung condition was due in signficiant part to byssinosis contracted by exposure to cotton dust during his employment in the textile industry. Plaintiff's average weekly wage was $106.40. Commissioner Shuping awarded plaintiff the sum of $70.94 per week from 6 May 1978, to continue during plaintiff's lifetime, a lump sum to be paid for the period between 6 May 1978 and the date of the award. The award was entered on 2 July 1980. On 4 September 1980, plaintiff filed a motion alleging that defendants had not perfected an appeal; that they had failed to pay plaintiff's award when due; and that plaintiff was entitled to an additional payment of ten percent of those installments not paid when due. Plaintiff moved to dismiss defendants' appeal. The Full Commission denied both motions, and the matter was subsequently heard on appeal by the Full Commission, which adopted and affirmed Commissioner Shuping's order and award. Defendants appealed and plaintiff cross-appealed.

*Hassell & Hudson, by Robin E. Hudson, for plaintiff-appellee.*

*Gene Collinson Smith, for defendant-appellants.*

WELLS, Judge.

[1] In their first and third assignments of error, defendants contend that the Commission erred in finding that plaintiff is permanently and totally disabled as a result of chronic obstructive lung disease which plaintiff contracted as a result of his exposure to cotton dust during his employment as a textile worker. Defendants' argument takes two tacks: one, that the evidence does not

support a finding of total disability; and two, that the evidence does not support a finding that plaintiff's disability was caused solely by his exposure to cotton dust in his employment. The standard of review of such findings by the Commission is well established. We quote from the opinion of our Supreme Court in *Walston v. Burlington Industries*, 304 N.C. 670, 285 S.E. 2d 822 (1982).

> Except as to questions of jurisdiction, the rule is that the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence. This is so even though there is evidence to support a contrary finding of fact. *Morrison v. Burlington Industries*, 301 N.C. 226, 271 S.E. 2d 364 (1980); *Inscoe v. Industries, Inc., 292 N.C. 210, 232 S.E. 2d 449 (1977)*; *Anderson v. Construction Co.*, 265 N.C. 431, 144 S.E. 2d 272 (1965); *Rice v. Chair Co.*, 238 N.C. 121, 76 S.E. 2d 311 (1953); *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760 (1950). The appellate court does not retry the facts. It merely determines from the proceedings before the Commission whether sufficient competent evidence exists to support its findings of fact. *Moses v. Bartholomew*, 238 N.C. 714, 78 S.E. 2d 923 (1953).

*See also Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981); *Harrell v. J. P. Stevens & Co., Inc.*, 54 N.C. App. 582, 284 S.E. 2d 343 (1981). Defendants' argument as to plaintiff's degree of disability rests entirely on Dr. Woolfolk's statement that plaintiff was totally disabled "as of now" and Dr. Williams' statement that plaintiff was disabled for "anthing except sedentary occupation in a very clean environment". The Commission found that plaintiff was permanently disabled as of the date of his retirement on 6 May 1978. Dr. Woolfolk's testimony that plaintiff was totally disabled as of the date of his testimony on 10 October 1979, eighteen months after plaintiff's retirement for disability, supports and enforces the Commission's findings and does not detract from or contradict them. As for Dr. Williams' evaluation of plaintiff's ability to work only at sedentary jobs in a very clean environment, such testimony must be evaluated in the light of plaintiff's education, training, and employment history. The question is what effect the disabling disease has had upon this particular plaintiff. *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978); *Mabe v. Granite Corp.*, 15 N.C. App. 253, 189 S.E. 2d

804 (1972). Plaintiff's age, education, training, and work experience do not suggest a reasonable probability that he could obtain employment in anything but a manual labor environment, since that is all he has ever done. *See Little*, supra. The Commission's findings as to his total disability, as these terms are used in our Workers' Compensation Act, G.S. 97-2(9) and G.S. 97-55, are clearly and amply supported by the evidence. *Little*, supra. *See Anderson v. Smyre Mfg. Co.*, 54 N.C. App. 337, 283 S.E. 2d 433 (1981).

[2] Defendants also argue that the evidence shows that plaintiff's disability was due in part to angina, pointing to Dr. Woolfolk's testimony. Dr. Woolfolk did not examine plaintiff and diagnose angina until 14 April 1979, almost eleven months after plaintiff became disabled for work. Defendants' argument is without merit. The injury resulting in disability due to a compensable disease occurs when the claimant becomes disabled. *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979). The onset of other non-work-related diseases or infirmities following the work-related injury, i.e., the work-related disablement, does not affect in any way plaintiff's entitlement to compensation as of the date of his work-related injury.

[3] Next, defendants argue that the evidence does not support a finding that the sole cause of plaintiff's disability was his occupational exposure to cotton dust and that the medical evidence before the Commission was not sufficiently definite on the cause of plaintiff's disability to permit effective appellate review. In support of this argument, defendants cite our Supreme Court's order in *Morrison v. Burlington Industries*, 301 N.C. 226, 271 S.E. 2d 364 (1980). We recognize that the court's order in *Morrison*, supra, and its subsequent opinion in *Morrison*, reported at 304 N.C. 1, 282 S.E. 2d 458 (1981) establish the standards by which we must resolve this issue. It is thus appropriate that we review the history of and the issue involved in *Morrison* in some detail. *Morrison* arrived at this court in the context of an appeal by plaintiff from an opinion and award in which the Industrial Commission, though finding plaintiff to be totally and permanently disabled, awarded her only partial compensation on the grounds that the medical evidence in the record showed that her total disability was due in part to non-occupational diseases or infirmities. In a

two to one decision[1] we held that the Commission was without authority to apportion plaintiff's disability where the evidence showed that her occupational disease was the precipatating cause of her inability to work. On appeal, our Supreme Court issued its 1980 order, supra, remanding the case directly to the Commission for further proceedings. In its order, the court stated that the medical evidence before the Commission was not sufficiently definite on the cause of plaintiff's disability to permit effective appellate review. We quote the statements we believe to be most pertinent to the issue now before us.

> As we read the medical testimony, the physicians never addressed the crucial medical question of the interrelations, if any, between the cotton dust exposure and claimant's other infirmities such as her bronchitis, upper respiratory infection, sinusitis, phlebitis, and diabetes. In order for this Court to determine if the Commission's findings and conclusions are supported by the evidence, the record, through medical testimony, must clearly show: (1) what percentage, if any, of plaintiff's disablement, i.e, incapacity to earn wages, results from an occupational disease; (2) what percentage, if any, of plaintiff's disablement results from diseases or infirmities unrelated to plaintiff's occupation which were accelerated or aggravated by plaintiff's occupational disease; and (3) what percentage, if any, of plaintiff's disablement is due to diseases or infirmities unrelated to plaintiff's occupation which were *not* accelerated or aggravated by plaintiff's occupational disease.

On remand, the Commission took additional medical evidence, readdressing the questions relating to the causes of Mrs. Morrison's disability. Following the hearing on remand, the Commission made additional findings of fact and entered an award for the same degree of partial disability: 55 percent, which it had originally found. In its 1981 opinion, supra, the Supreme Court affirmed, holding that the medical evidence adduced at the hearing on remand clearly supported apportionment of only a part of Mrs. Morrison's disability to her occupational disease. In its opinion, the court stated the rule in such cases as follows:

---

1. Reported at 47 N.C. App. 50, 266 S.E. 2d 741 (1980).

What, then, must a plaintiff show to be entitled to compensation for disablement resulting from an occupational disease covered by G.S. 97-53(13)? The answer is: She must establish (1) that her disablement *results from an occupational disease* encompassed by G.S. 97-53(13), *i.e.*, an occupational disease due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment as distinguished from an ordinary disease of life to which the general public is equally exposed outside of the employment; and (2) the extent of the disablement *resulting from* said occupational disease, *i.e.*, whether she is totally or partially disabled *as a result of the disease*. If the disablement resulting from the occupational disease is total, the claimant is entitled to compensation as provided in G.S. 97-29 for total disability. If the disablement resulting from the occupational disease is partial, the claimant is entitled to compensation as provided in G.S. 97-30 for partial disability. To be compensable under the Workers' Compensation Act, an injury must result from an accident arising out of and in the course of the employment. G.S. 97-2(6). Claimant has the burden of showing such injury. (Citation omitted.) That means, in occupational disease cases, that disablement of an employee resulting from an occupational disease which arises out of and in the course of the employment, G.S. 97-52 and G.S. 97-2(6), is compensable and claimant has the burden of proof "to show not only . . . disability, but also its degree." (Citation omitted.)

We find that plaintiff's evidence in this case meets the requirements of *Morrison*, supra. The testimony of both Dr. Williams and Dr. Woolfolk established plaintiff's lung disease as the cause of his disability. The medical evidence clearly supports the Commission's finding that plaintiff's lung disease was the cause of his disability and that his lung disease was caused by his exposure to cotton dust in his employment. Plaintiff's own testimony describing the physical manifestations of his disability: shortness of breath, inability to walk or remain ambulatory for more than short distances, and inability to exert himself more than minimally due to breathing difficulties, when taken together with the medical testimony, clearly support the Commission's finding that plaintiff's disability was due to chronic obstructive

lung disease. Defendant argues, nevertheless, that because the medical evidence shows that plaintiff's lung disease was of three types: emphysema, chronic bronchitis, and byssinosis, such evidence requires apportionment of plaintiff's lung dysfunction to the degree it may have been caused by non-occupational factors. Dr. Williams addressed this issue directly. He stated on direct examination that it was probable that plaintiff's lung condition was caused by exposure to cotton dust. After discussing the symptomatology of emphysema, chronic bronchitis, and byssinosis, Dr. Williams testified on cross-examination:

> I indicate in my comments that "it is not possible to make any medical statement as to the percentage of pulmonary dysfunction resulting from these various etiological agents." What I am saying, I can't assign any percentage of his impairment to any one cause.

Thus, the issue of causation was clearly addressed. Under such circumstances and in view of such evidence, it is for the Commission as the trier of facts to weigh the evidence in the case and to make findings based on that evidence. We do not believe that the principles laid down in *Morrison* require medical witnesses to do any more than deal with the symptoms and history of the patient under treatment or examination. Based on Dr. Williams' diagnosis that plaintiff's lung dysfunction was probably caused by exposure to cotton dust in plaintiff's employment, and his determination that if there were other possible contributing agents or causes, such other causes could not be quantified, the Commission was justified in finding the occupational exposure to be the sole cause of injury. *See Anderson v. Smyre Mfg. Co.,* supra. *Compare Walston v. Burlington Industries,* supra and *Hansel v. Sherman Textiles,* 304 N.C. 44, 283 S.E. 2d 101 (1981). We therefore reject defendants' argument and overrule these assignments.

[4] Defendant also contends that the Commission erred in the manner in which it established plaintiff's average weekly wage. The controlling statute, G.S. 97-2(5), provides that:

> "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceeding the date of the injury, . . . divided by 52. . . . Where the employment prior to the injury extend-

ed over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed: provided results just and fair to both parties will be thereby obtained.

During the 52 weeks immediately preceding the date of plaintiff's injury — 6 May 1978 — plaintiff worked only during the period from 21 February to 6 May, a total of approximately 12 weeks. Due to his weakened condition, during that short period plaintiff worked a number of short days and earned only $748.20, for an average of about $62.50 per week by a weekly division computation. Due to the circumstances, the Commission considered plaintiff's earnings at Waverly Mills during the period between 7 September 1976 and 6 May 1977, when plaintiff was able to maintain steady employment. The Commission found an average weekly wage based on plaintiff's earnings from both of these periods of employment. We find that the Commission's methodology fairly approximated plaintiff's "average weekly wages", as that term is used in the statute and was fair and just to both parties. This assignment is overruled.

[5] Plaintiff has cross-appealed and assigned as error the Commission's failure to dismiss defendant's appeal and its failure to award plaintiff additional compensation for defendant's failure to pay plaintiff's award when due under G.S. 97-18.

The Commission was not in error in denying plaintiff's motion to dismiss defendant's appeal. The chronology of events is as follows. Deputy Commissioner Shuping's order was entered 2 July 1980. On 14 July 1980, defendants forwarded a letter to the Commission, the pertinent portions of which are:

> Please take this letter as our Notice of Protective Appeal in the above styled matter, to the Opinion and Award by Lawrence B. Shuping, Jr. filed on July 2, 1980.

> When the transcript has been prepared in this matter please forward it to this address.

Defendant did not provide plaintiff with a copy of the letter. On 4 September 1980, plaintiff filed a motion pursuant to the provisions of G.S. 97-18 for a penalty for defendant's failure to pay plaintiff's award when due, also alleging that defendants had not

filed timely notice perfecting their appeal. On 5 September 1980, defendants filed an answer to plaintiff's motion, praying that plaintiff's motion be dismissed. That answer was served on plaintiff. On 19 September 1980 the Commission entered an order noting the foregoing events and delayed ruling on plaintiff's motions. On 24 September 1980 plaintiff filed a motion to dismiss defendant's appeal, alleging that defendants had never filed a notice of appeal or notice of intent to perfect their "protective" appeal. In its final order, the Commission found that defendants' appeal was valid and denied plaintiff's motion for a penalty. The governing statute is G.S. 97-18, which requires no particular form or content for the lodging of an appeal. G.S. 97-85 provides: "If application is made . . . within 15 days from the date when notice of the award shall have been given, the full (sic) Commission shall review the award. . .". Neither of these sections of the statute requires that an application for appeal be served upon or provided to other parties. Rule XXI of the Rules of the Industrial Commission provides in pertinent part as follows:

> 1. A letter expressing wish to appeal shall be considered notice of appeal to the Full Commission within the meaning of Section 85 of the Act.

> 2. Upon receipt of notice of appeal, the Commission will supply to the appellant proper form upon which he must state the particular grounds for his appeal. This form must be filed with the Commission, copy to appellee, within ten (10) days of appellant's receipt of transcript of the record, unless the use of such forms shall, in the discretion of the Commission, be waived.

> 3. Particular grounds for appeal not set forth in the application for review shall be deemed to be abandoned and argument thereon shall not be heard before the Full Commission. A nonappealing party is not required to file conditional assignments of error in order to preserve his rights for possible further appeals.

Rule XXI-1a, effective 1 February 1979, in its entirety is as follows:

> Appellant shall, upon giving notice of appeal to the Full Commission, state in writing to the Commission that he

believes there are good grounds for the appeal, shall list grounds of the appeal, and shall state that he has served copy of the notice of appeal and copy of the grounds of appeal on the appellee. Appellant is not limited to those listed grounds of appeal.

It is clear that while defendants may have met the provisions of Rule XXI, they clearly did not comply with Rule XXI-1a.[2] It would also seem clear, however, that the Commission deemed defendant's letter of 14 July 1980 to be an application for review under G.S. 97-85 and that the Commission waived the application of Rule XXI—1a to defendants' appeal in this case. The Commission has discretionary authority to waive its rules where such action does not controvert the provisions of the statute. Rule XXIV. The exercise of its discretion in such matters is not reviewable by the courts, absent a showing of manifest abuse of that discretion. *See generally Utilities Commission v. Area Development, Inc.,* 257 N.C. 560, 126 S.E. 2d 325 (1962). Having properly found defendant's appeal to be valid and timely, the Commission did not err in denying plaintiff's motion for a penalty award. Plaintiff's assignments of error are overruled.

The opinion and award of the Commission is

Affirmed.

Judges ARNOLD and MARTIN (Harry C.) concur.

---

2. The provisions of Rules XXI and XXI-1a are not entirely consistent and may therefore present a potential for confusion as to the various steps to be taken in appealing to the Full Commission from an award by a Hearing Commissioner. Defendants' filing of a so-called "protective" appeal in this case, a term not found in the rules, suggests a need for clarification.