Garner v. J. P. Stevens and Co.

---

CHARLIE BEN GARNER, EMPLOYEE v. J. P. STEVENS AND COMPANY, INC., EMPLOYER, AND LIBERTY MUTUAL INSURANCE COMPANY, CARRIER

No. 8110IC581

(Filed 16 March 1982)

**Master and Servant § 68— workers' compensation—occupational disease—cause of disability—remand for further evidence and findings**

Where the medical evidence tended to show that plaintiff suffered from the occupational disease byssinosis and from the non-occupational diseases arteriosclerosis, kyphosis and organic brain syndrome, but the evidence in the record was not sufficiently definite as to the cause of plaintiff's disability to permit effective appellate review, the cause must be remanded for further medical testimony and findings as to (1) whether the non-occupational diseases were aggravated or accelerated by plaintiff's occupational disease; (2) if so, the percentage of plaintiff's disability resulting from (a) his byssinosis and (b) his non-occupational diseases which were aggravated or accelerated by plaintiff's byssinosis; and (3) if plaintiff's non-occupational diseases were not aggravated or accelerated by his byssinosis, the portion of plaintiff's disability resulting from the occupational disease byssinosis.

Judge HEDRICK concurring in result.

APPEAL by defendants from the North Carolina Industrial Commission. Opinion and Award entered 20 January 1981. Heard in the Court of Appeals 4 February 1982.

Plaintiff filed a claim for workers' compensation benefits alleging that he is suffering from byssinosis, "an occupational disease caused by exposure to cotton dust." Deputy Commissioner Angela R. Bryant made findings of fact and conclusions of law and awarded compensation to plaintiff. Defendants appeal from the Full Commission's opinion and award which adopted and affirmed the deputy commissioner's opinion and award.

*Hassell, Hudson & Lore, by Charles R. Hassell, Jr. and Robin E. Hudson, for plaintiff-appellee.*

*Maupin, Taylor & Ellis, by Richard M. Lewis and David V. Brooks, for defendant-appellants.*

HILL, Judge.

The following facts found by Deputy Commissioner Bryant and affirmed by the Full Commission are pertinent to our decision:

> 3. Plaintiff's work and cotton dust exposure history are as follows:

> [(a) October 5, 1939 to April 17, 1953

> Roanoke #2 Mill of defendant employer; plaintiff was a laborer and scrubber and worked in the picker room, card room, spinning room, weave room and supply room while the mill was running. Cotton was processed in this mill at all times during this period. As a scrubber, plaintiff scooped up water as another worker ran a machine that cleaned the floors. The air in the picker room and card room was dusty with cotton dust in the air. Cotton dust blew off the machine in the areas where plaintiff scrubbed floors. The floors had been swept prior to plaintiff's scrubbing. Plaintiff was exposed to respirable cotton dust. The card room air was the dustiest and the air appeared foggy.]

> . . . .

> (d) May 25, 1953 to January 26, 1970

> Roanoke #1 Mill of defendant-employer; plaintiff was a sweeper in the spinning department. The mill processed cotton at all times during this period. Plaintiff swept the cotton dust and waste off the floors, blew off frames, spoolers and winders. Plaintiff picked up the cotton dust and waste by hand with a broom, bagged it and took it to the waste house. The air was dusty and linty with cotton dust most of the time. Sometimes plaintiff ran the elevator to go to the card

Garner v. J. P. Stevens and Co.

room and bring bagged cotton waste down and to haul cotton filling to the weave room and slasher room.

[Plaintiff swept most of the time. The air was extremely dusty when plaintiff blew off a certain number of frames once or twice in eight hours. Plaintiff was exposed to respirable cotton dust during this period of his employment with defendant-employer.]

. . . .

[(e) January 26, 1970

Plaintiff stopped work because of his breathing problems and was totally and permanently disabled as a result of arteriosclerosis and byssinosis. Plaintiff did not retire until January 26, 1971 because he was hoping to get better and return to work, but he was not able to do so.]

. . . .

6. On April 18, 1970, plaintiff was hospitalized by Dr. Frazier for chronic lung disease and arteriosclerotic heart disease with congestive heart failure. Plaintiff's breathing problems became progressively worse from this point. Plaintiff's nose and throat would get stopped up at night and plaintiff had to sit up until the symptoms, including chest tightness eased and until plaintiff would cough up sputum.]

. . . .

9. Plaintiff suffers air flow obstruction and a limitation of his ability to improve oxygenation with exercise. Plaintiff overbreathes at rest. Plaintiff suffers from kyphosis (increase in chest diameter) because of overinflation from the lung disease and because of spine curvature with aging. Plaintiff also suffers from generalized arteriosclerosis with involvement of circulation to the head.]

[12. Plaintiff was as of January 26, 1970 and remains totally and permanently disabled as a result of byssinosis and arteriosclerosis.]

. . . .

[13. Plaintiff's byssinosis was caused by his exposure to respirable cotton dust in his employment with defendant-employer as detailed in paragraph three above.]

From these facts, the deputy commissioner concluded that plaintiff contracted byssinosis "as a result of exposure to cotton dust in his employment with defendant-employer," and that plaintiff is entitled to "compensation for total disability from January 26, 1970 for a period of 400 weeks at the rate of $50.00 per week and in no event shall the total compensation paid exceed $18,000.00."

Our scope of review in this matter is defined as follows:

Except as to questions of jurisdiction, the rule is that the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence. This is so even though there is evidence to support a contrary finding of fact. [Citations omitted.] The appellate court does not retry the facts. It merely determines from the proceedings before the Commission whether sufficient competent evidence exists to support its findings of fact.

*Morrison v. Burlington Industries,* 304 N.C. 1, 6, 282 S.E. 2d 458, 463 (1981). *Accord, McKee v. Crescent Spinning Co.,* 54 N.C. App. 558, 284 S.E. 2d 175 (1981). "In making its findings, the Commission's function is 'to *weigh and evaluate* the *entire* evidence and determine as best it can where the truth lies.'" *Harrell v. J. P. Stevens & Co.,* 45 N.C. App. 197, 205, 262 S.E. 2d 830, 835, *disc. rev. denied,* 300 N.C. 196, 269 S.E. 2d 623 (1980) (emphasis original). The Industrial Commission is the sole judge of the witnesses' credibility and may choose to believe all, a part, or none of any witnesses' testimony. *Id.; Morgan v. Thomasville Furniture Industries, Inc.,* 2 N.C. App. 126, 162 S.E. 2d 619 (1968).

We find sufficient evidence in the case *sub judice* to support the findings of fact. On the critical issue of causation, Dr. Herbert Otto Sieker testified that plaintiff suffers from arteriosclerosis, byssinosis, kyphosis, and organic brain syndrome. There is evidence, mirrored in Finding of Fact No. 9, that plaintiff's byssinosis has aggravated his kyphosis. Dr. Sieker explained that changes in plaintiff's air flows were due to an overinflated chest, caused by "obstructive lung disease" and kyphosis. "Kyphosis,"

he stated, "is often seen in conjunction with chronic obstructive lung disease." In addition, there is evidence that plaintiff's lung dysfunction would detrimentally affect his arteriosclerosis.

Dr. Sieker's medical report concluded as follows:

It appears that much of his disability is due to his cardiovascular disease. Certainly historically, the cotton dust exposure appeared to cause respiratory symptoms at the time that the patient worked in the mills, but I do not think it is possible to say he is disabled on the basis of chronic obstructive lung disease due to cotton dust exposure.

However, he testified that "cotton dust exposure appeared to cause respiratory symptoms and this could contribute to the obstructive lung disease which this patient shows." Dr. Sieker concluded that plaintiff is "not disabled *on the basis of lung disease exclusively,*" but that plaintiff's arteriosclerosis and organic brain syndrome are contributing factors. (Emphasis added.)

In sum, this evidence tends to show that only plaintiff's byssinosis is an occupational disease; his arteriosclerosis, kyphosis, and organic brain syndrome therefore appear to be "ordinary diseases of life to which the general public is equally exposed outside of the employment," non-occupational in origin. G.S. 97-53(13). *Cf. Walston v. Burlington Industries,* 304 N.C. 670, 285 S.E. 2d 822 (1982); *Hyatt v. Waverly Mills,* 56 N.C. App. 14, 286 S.E. 2d 837 (1982); *Frady v. Groves Thread Co.,* 56 N.C. App. 61, 286 S.E. 2d 844, *disc. rev. allowed,* 305 N.C. 585, 292 S.E. 2d 570 (1982).

Since the opinion and award of the Full Commission was entered, the following rules have been promulgated and now apply to these facts:

When a pre-existing, *nondisabling, non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment or by an occupational disease so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent.

. . . .

When a claimant becomes incapacitated for work and part of that incapacity is caused, accelerated or aggravated by an occupational disease and the remainder of that incapacity for work is not caused, accelerated or aggravated by an occupational disease, the Workers' Compensation Act of North Carolina requires compensation only for that portion of the disability caused, accelerated or aggravated by the occupational disease.

*Morrison v. Burlington Industries, supra* at 18, 282 S.E. 2d at 470 (emphasis original).

In light of the *Morrison* rules, it specifically must be found if plaintiff's occupational disease, byssinosis, aggravated or accelerated any of the existing maladies not attributable to his employment; or, if such aggravation or acceleration did not occur, what portion of plaintiff's disability is due to the occupational disease. As in *Hansel v. Sherman Textiles,* 304 N.C. 44, 55, 283 S.E. 2d 101, 107 (1981), the medical evidence in the record *sub judice* is insufficient to make such findings "on the cause of plaintiff's disability to permit effective appellate review." Thus, the record must be supplemented by additional medical testimony to indicate answers to the following questions:

(1) Were the non-occupational diseases aggravated or accelerated by plaintiff's occupational disease, byssinosis?

(2) If so, what percentage of plaintiff's disability results from (a) his byssinosis, and (b) his non-occupational diseases which were aggravated or accelerated by plaintiff's byssinosis?

(3) If plaintiff's non-occupational diseases were not aggravated or accelerated by his byssinosis, what portion of plaintiff's disability results from the occupational disease, byssinosis?

*See generally Hansel v. Sherman Textiles, supra.*

The present findings of fact are supported by the evidence and must be affirmed. However, since they now are insufficient to enable this Court to determine the rights of the parties in this matter, the cause must be remanded to the Industrial Commission to re-examine the medical witness, elicit the answers to the ques-

tions posed above, and make additional findings of fact and conclusions of law upon which to base an opinion and award. Because of this result, we choose not to address plaintiff's cross-assignments of error at this time.

Thus, we affirm the present findings of fact, vacate the conclusions of law, and direct that the cause be remanded in accordance with the above directives.

Affirmed in part; vacated in part; and remanded.

Judge BECTON concurs.

Judge HEDRICK concurs in the result.

Judge HEDRICK concurring in result.

Since the majority opinion affirms the "present findings of fact" and vacates the "conclusions of law," and because the meaning of these expressions is illusory, I feel compelled to attempt to explain my decision. Whether labelled a finding or conclusion, the Commission clearly concluded that plaintiff suffered an occupational disease. This conclusion is supported by the findings which are supported by the evidence. Findings of fact numbers 3, 6, 9, and 13 are supported by the evidence. Finding of fact number 12, insofar as it purports to conclude that plaintiff is "totally and permanently disabled as a result of byssinosis and arteriosclerosis," is not supported by either the findings of fact or the evidence, and was apparently vacated by the majority opinion. Whether plaintiff was disabled to any extent by his occupational disease is a necessary conclusion to be drawn from the findings of fact. The Commission only obliquely, if at all, made such a finding or conclusion. Such a finding or conclusion is, in my opinion, not supported by either the testimony or report of Dr. Seiker, simply because Dr. Seiker throughout his testimony and his report related his opinion with respect to plaintiff's disability to both his occupational and nonoccupational diseases. When Dr. Seiker was asked specifically whether plaintiff would be disabled because of the occupational disease if he did not have "organic brain syndrome or any heart problem," he replied,

Well, he would be limited in his ability to do heavy work or work which requires strenuous or sustained exercise. That I

would expect that he could carry on modest activity or sedentary kinds of jobs.

If I had seen Mr. Garner in 1970 when he retired, based on the history up that point of 1970, when he was having shortness of breath and found it difficult to work and with the history that he was better away from work, I think it would only be reasonable to recommend that he stop exposing himself to the environment that had caused his symptoms. I would have asked that he get out of the cotton dust because when he was in it he had cough and shortness of breath and wheezing.

The last sentence of my report reads "I do not think it is possible to say he is disabled on the basis of chronic obstructive lung disease due to cotton dust exposure." I think that statement is correct. . . .

The majority remands the case to the Commission to "reexamine the medical witness, elicit the answers to the questions posed above, and make additional findings of fact and conclusions of law upon which to base an opinion and award." Because Dr. Seiker's testimony and report is so equivocal with respect to whether plaintiff was disabled as a result of his occupational disease, he should be given an opportunity, if not required, to be more definitive with respect to whether plaintiff is disabled by his occupational disease before the witness is required to answer the specific questions posed in the majority opinion. Since the majority has vacated all conclusions of law, the Commission, in my opinion, is not precluded from finding and concluding that plaintiff's disability does not result from his occupational disease, nor is the Commission precluded from finding and concluding that the occupational disease did not aggravate or accelerate the nonoccupational diseases.