Mebane v. General Electric Co.

---

MELINDA MEBANE, EMPLOYEE, PLAINTIFF v. GENERAL ELECTRIC COM-
PANY, EMPLOYER, AND ELECTRIC MUTUAL LIABILITY INSURANCE
COMPANY, CARRIER, DEFENDANTS

No. 8318IC1234

(Filed 16 October 1984)

1. Master and Servant § 95.1— workers' compensation—appeal to Full Commission—waiver of procedural rule

By hearing plaintiff's appeal, the Full Commission waived plaintiff's compliance with a procedural rule and in effect determined defendant's motion to dismiss plaintiff's appeal for failure to comply with that rule. Industrial Commission Rule XXI(2).

2. **Master and Servant § 56— workers' compensation—cause of blackouts and diz-
   ziness—supporting evidence**

   Competent medical evidence, although conflicting, was sufficient to sup-
   port a determination by the Industrial Commission that plaintiff's disabling
   blackout spells and dizziness are not the result of a head injury received in a
   work-related accident but are the result of surgery for a congenital brain
   disorder.

APPEAL by plaintiff from order of the North Carolina In-
dustrial Commission entered 15 June 1983. Heard in the Court of
Appeals 20 September 1984.

Plaintiff claimed workers' compensation benefits after ex-
periencing a work related accident on 23 August 1979. She fell
from a ladder striking her face in the area of the right eye,
resulting in an immediate tonic-clonic seizure and temporary un-
consciousness. Plaintiff and defendants entered into a voluntary
agreement on 17 September 1979 compensating plaintiff for medi-
cal expenses and loss of wages for temporary total disability until
1 June 1980.

During treatment for the employment related injury by Dr.
James Love, plaintiff experienced continuing headaches and sen-
sations behind the right eye. Dr. Love discovered that plaintiff
had a potentially fatal congenital arteriovenous malformation, a
brain lesion that was coincidentally situated near the area of her
head injury. It is undisputed that the congenital malformation
was neither caused nor aggravated by plaintiff's fall. Plaintiff was
treated with anti-seizure medication and the brain malformation
was successfully corrected surgically on 16 October 1979 by Dr.
Stephen Robinson.

Following the operation and until May 1980, plaintiff ex-
perienced tingling in her left hand and recurring headaches, but
progressed to the point that Dr. Robinson released plaintiff to
return to work beginning in June 1980. In July 1980, plaintiff con-
sulted Dr. Love who detected a decreased left feature of the
mouth. He reduced dosages of anti-seizure medication. Plaintiff
developed persistent episodes of dizziness when turning her head
or bending forward. By December 1980, plaintiff was experiencing
sudden blackout spells accompanied by falling. In January 1981,
Dr. Jefferson Kiser treated plaintiff for the blackout episodes, oc-
curring several times per month, and persistent headaches. Anti-
seizure medications failed to control her condition.

Plaintiff filed for continuing workers' compensation benefits alleging that her condition was the result of her employment related accident. Defendants denied liability alleging that plaintiff's condition was the result of the congenital brain disorder and subsequent surgery. Deputy Commissioner Ben Roney, Jr., held that plaintiff was not entitled to additional workers' compensation benefits. His pertinent findings of fact, to which plaintiff excepts are:

16. Claimant's blackout spells and dizziness are not the result of injuries suffered in the 23 August 1979 fall.

17. Incapacity to earn wages experienced by claimant after 1 June 1980 has not been occasioned by the injuries suffered in the 23 August 1979 fall.

Commissioner Roney's order, dated 2 September 1982, concluded from these and other findings of fact that plaintiff was not entitled to workers' compensation benefits beyond 1 June 1980 already compensated by agreement of the parties.

On 17 September 1982, plaintiff filed notice of appeal to the Full Commission. The Full Commission heard the appeal and adopted Commissioner Roney's opinion, with one commissioner dissenting. Plaintiff appealed and defendants cross-assigned error for failure of the Commission to dismiss plaintiff's appeal to the Full Commission.

*Bowden & Bowden, by Joel G. Bowden, for plaintiff.*

*Smith, Moore, Smith, Schell & Hunter, by Jeri L. Whitfield, for defendants.*

WELLS, Judge.

[1] Defendants cross-assign error to the Industrial Commission's failure to grant dismissal of plaintiff's appeal to the Full Commission because plaintiff failed to comply with Rule XXI of the Rules of the North Carolina Industrial Commission. Rule XXI(2) states that:

[T]he Commission will supply to the ·appellant proper form upon which he must state the particular grounds for his appeal. This form must be filed with the Commission, copy to appellee, within ten (10) days of appellant's receipt of

transcript of the record, unless the use of such forms shall, in the discretion of the Commission, be waived.

The transcript of the hearing before Commissioner Roney was filed on 16 December 1982. On 23 March 1983, defendants filed the motion to dismiss. On 12 May 1983, plaintiff filed an application for review in accordance with Rule XXI(b).

The record on appeal is devoid of information showing whether or not the Industrial Commission considered defendant's motion. It is apparent the Full Commission waived defendant's motion by hearing plaintiff's appeal. Rule XXIV of the Rules of the North Carolina Industrial Commission provide that "[i]n the interest of justice, any procedural rule may be waived. . . ." In *Hyatt v. Waverly Mills*, 56 N.C. App. 14, 286 S.E. 2d 837 (1982), we held that "[t]he exercise of [the Commission's] . . . discretion in such matters is not reviewable by the courts, absent a showing of manifest abuse of that discretion." Defendant has made no showing of abuse of discretion. This assignment of error is overruled.

[2] Plaintiff contends that the Deputy Commissioner erred in finding that (1) the plaintiff's blackout spells and dizziness are not the result of the employment accident; (2) the resulting incapacity to earn wages was not the result of that accident; and (3) the Full Commission erred in adopting the Deputy Commissioner's finding of fact and conclusion of law that plaintiff's incapacity to earn wages was not the result of the accident. Our courts have consistently held that workers injured in compensable accidents are entitled to be compensated for all disability caused by and resulting from the compensable injury. *Giles v. Tri-State Erectors*, 287 N.C. 219, 214 S.E. 2d 107 (1975); *accord Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978); *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978); *Roper v. J. P. Stevens & Co.*, 65 N.C. App. 69, 308 S.E. 2d 485 (1983), *disc. rev. denied*, 310 N.C. 309, 312 S.E. 2d 652 (1984). In this case, the parties stipulated that plaintiff was entitled to compensation for medical expenses and temporary permanent disability from the date of the employment accident until 1 June 1980. The issue presented is whether or not plaintiff is entitled to disability benefits beyond that date. The pivotal question in each of plaintiff's assignments of error is whether plaintiff's disabling seizures are the result of her employment related injury or the congenital brain disorder.

We first note that jurisdiction of appellate courts in reviewing a decision of the Industrial Commission is limited to the questions (1) whether there was competent evidence before the Commission to support its findings and (2) whether such findings support its legal conclusions. *Perry v. Furniture Co., supra.* The Industrial Commission's findings of fact "are conclusive on appeal when supported by competent evidence even though there is evidence to support contrary findings. . . ." *Dowdy v. Fieldcrest Mills*, 308 N.C. 701, 304 S.E. 2d 215 (1983), *reh. denied*, --- N.C. ---, 311 S.E. 2d 590 (1984). We find that Commissioner Roney's findings cited above, and adopted by the Full Commission, are supported by competent evidence of Dr. Love even though contradicted by Dr. Kiser. The findings of fact, in turn, support the legal conclusions of the Commission.

Dr. Love, a neurologist qualified as an expert witness, treated plaintiff from 31 August 1979 until December 1980. He performed extensive diagnostic tests in treating plaintiff. In his opinion, plaintiff's blackout spells were caused by either the arteriovenous malformation or the physiological changes resulting from the corrective surgery. He ruled out post-traumatic epilepsy resulting from plaintiff's fall, but admitted that absolute certainty was impossible. Dr. Robinson, plaintiff's neurosurgeon and qualified as an expert witness, testified that the cause of plaintiff's seizures could be either the brain malformation or the trauma produced by the fall. It is his experience that where the dura mater surrounding the brain is punctured, as in plaintiff's surgery, the chance of resulting seizure disorder exceeds sixty percent compared to a five percent probability of such disorder associated with a closed head injury, as in plaintiff's fall.

Dr. Kiser, a neurologist and qualified as an expert witness, treated plaintiff since 16 January 1981 in an attempt to control her seizures, dizziness, and headaches. He thoroughly reviewed the previous medical history and performed numerous diagnostic tests. His opinion is that plaintiff's seizures may have manifested themselves prior to surgery and were attributable to plaintiff's accident. His diagnosis is that her condition will not improve.

Plaintiff contends that Dr. Love and Dr. Robinson's evidence is incompetent to find that plaintiff's disability is related to the congenital brain malformation. Plaintiff argues that both physi-

cians based their testimony on statistical probabilities that patients with penetration of the dura mater will suffer seizures more frequently than patients with closed head trauma. Both doctors, especially Dr. Robinson, relied on statistical probabilities. The record discloses, however, that Dr. Love, also based his opinion on numerous specific findings relating to this plaintiff that are not based on mere statistical comparisons.

Defendants argue that because of the conflicting medical evidence the determination of this case must be based on statistical probabilities. We reject this assertion. We agree with that part of Commissioner Charles Clay's reasoned statement in dissent from the Full Commission that "the decision in this case should be based not on general 'medical probabilities' but upon the medical evidence in this specific case. . . ."

We hold that competent, albeit conflicting, evidence was introduced by plaintiff and defendants on the issue of causation of plaintiff's disability. The Industrial Commission's findings are supported by that evidence and are conclusive on appeal, *Dowdy v. Fieldcrest Mills, supra.* The findings support the Commission's legal conclusions, *Perry v. Furniture Co., supra.* The decision of the Industrial Commission must be and is hereby

Affirmed.

Judges ARNOLD and HILL concur.