ELVA L. LITTLE v. ANSON COUNTY SCHOOLS FOOD SERVICE AND TRAVELERS INSURANCE COMPANY

No. 8

(Filed 29 August 1978)

1. **Master and Servant §§ 67.1, 94.1— workmen's compensation—injury to spinal cord—compensation for partial loss of use of back improper**
    Where the uncontradicted evidence tended to show that plaintiff suffered an injury to her spinal cord which resulted in weakness in all of her extremities and numbness or loss of sensation throughout her body, and that she suffered diminished mobility and had "difficulty with position sense and with recognition of things in her hands when objects are placed in her hands," the Industrial Commission could not limit plaintiff to an award under G.S. 97-31(23) for partial loss of use of her back but instead should have taken into account all compensable injuries resulting from the accident.

2. **Master and Servant § 67.3 — workmen's compensation — pre-existing conditions of age, education, work experience**

   If pre-existing conditions such as an employee's age, education and work experience are such that an injury causes him a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the incapacity which he or she suffers, and not for the degree of disability which would be suffered by someone with superior education or work experience or who is younger or in better health.

3. **Master and Servant § 93.2 — evidence not presented — reliance on deputy commissioner's representation — right to present evidence abridged**

   When a claimant refrains from presenting evidence in reliance on an inaccurate statement by a deputy commissioner of the Industrial Commission that a certain matter is uncontested, the right to testify and present evidence guaranteed by G.S. 97-84 has been abridged and the claimant's failure to present such evidence may not be used against him; therefore, before the Commission may determine that plaintiff is not entitled to compensation for permanent total disability, she must be afforded an opportunity to present evidence relevant to her capacity to work and earn wages.

4. **Master and Servant § 69 — workmen's compensation — extent of incapacity for work as criterion**

   The criterion for compensation in workmen's compensation cases covered by G.S. 97-29 or -30 is the extent of the claimant's "incapacity for work." Physicians' estimates of plaintiff's disability which referred only to the degree of loss of use of her nervous system and to the impairment of her ability to carry out "total life functions" were insufficient to support the Commission's finding that plaintiff was entitled to compensation for permanent partial disability or loss of use of her back and not to benefits for total incapacity to work, since a person may be wholly incapable of working and earning wages even though her ability to carry out normal life functions has not been wholly destroyed and even though she has not lost 100 percent use of her nervous system.

5. **Master and Servant § 94 — employee's average weekly wage — stipulation — binding effect**

   A stipulation between the parties in a workmen's compensation case as to the plaintiff's average weekly wage was approved by the Industrial Commission and was binding absent a showing of error due to fraud, misrepresentation, undue influence or mutual mistake, and no such showing or allegation was made by plaintiff. G.S. 97-17.

ON certiorari to review decision of the Court of Appeals affirming the award of the North Carolina Industrial Commission, 33 N.C. App. 742, 236 S.E. 2d 801 (1977).

The facts pertinent to decision in this workmen's compensation case are narrated below:

1. On 20 November 1973 plaintiff was injured under compensable circumstances when she fell over a mop bucket and landed

in a sitting position. The fall resulted in a significant injury to her spinal cord in the mid-cervical region.

2. On 24 January 1974 Dr. Jerry Greenhoot performed an anterior cervical fusion and discectomy in an attempt to decompress the spinal cord. Plaintiff reached maximum improvement on 3 July 1974 and was discharged from Dr. Greenhoot's care. The operation did not repair the spinal cord damage and produced no significant improvement in plaintiff's condition. Dr. Greenhoot testified that nothing further can be done medically to alleviate plaintiff's spinal cord injury, which has resulted in incomplete use of her extremities and weakness of grip. He rated plaintiff's physical disability at 50 percent. He emphasized, however, that this estimate of disability "is not related to work," but rather refers to the diminution of plaintiff's ability to carry out "total life function." He further testified that in his opinion plaintiff was wholly incapable of resuming her former employment as a laborer.

3. On 16 April 1974 the parties signed an agreement providing, in pertinent part, that plaintiff's injury occurred under compensable circumstances, that her average weekly wage including overtime and all allowances was $62.40, and that defendants would pay compensation at the rate of $41.60 per week "for necessary weeks."

4. On 19 September 1974 plaintiff was examined by Dr. Stephen Mahaley, a neurosurgeon at Duke Hospital. This doctor found that she had a generalized weakness in both arms and both legs, loss of mobility, numbness to pin prick "throughout her body on right and left sides," and had difficulty with tactile recognition of objects placed in her hands. Dr. Mahaley testified that in his opinion plaintiff had suffered an injury to her spinal cord in the neck area; that she had a pre-existing arthritic condition in her neck which was activated by the trauma of her fall; that "further medical treatment will not change her neurological condition"; and that she has suffered a 40 percent disability to the neurological system. When asked concerning plaintiff's ability to work, Dr. Mahaley replied: "I think there are some gainful occupations that someone with this degree of neurological problem could pursue."

Following the evidentiary hearings, Deputy Commissioner Dandelake found, *inter alia,* that plaintiff's average weekly wage

at the time of her injury was $58.31 and that she had suffered "an average permanent partial disability of 45% or loss of use of her back." Accordingly, he awarded compensation at the rate of $38.87 per week for 135 weeks commencing 8 August 1974 pursuant to G.S. 97-31(23).

On appeal the full Industrial Commission, by majority vote, affirmed the Deputy Commissioner's findings except for his calculation of plaintiff's average weekly wage, which was found to be $62.40 instead of $58.31. Plaintiff's weekly compensation was increased accordingly to $41.60. Plaintiff appealed to the Court of Appeals and that Court affirmed the Commission's decision in all respects. We allowed certiorari to review the decision of the Court of Appeals.

*Henry T. Drake, attorney for plaintiff appellant.*

*B. Irvin Boyle and Norman A. Smith of Boyle, Alexander and Hord, attorneys for defendant appellees.*

HUSKINS, Justice.

[1] By her first, second and fourth assignments of error plaintiff challenges the correctness of the decision of the Court of Appeals affirming the Commission's determination that she has suffered a "permanent partial disability of 45% or loss of use of her back" which entitles her to receive compensation equal to two-thirds of her average weekly wage for a period of 135 weeks pursuant to G.S. 97-31(23).

G.S. 97-31 provides in pertinent part: "In cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue for the period specified, and shall be in lieu of all other compensation, including disfigurement, to wit: . . . (23) For the total loss of use of the back, sixty-six and two-thirds percent (66⅔%) of the average weekly wages during 300 weeks. The compensation for partial loss of use of the back shall be such proportion of the periods of payment herein provided for total loss as such partial loss bears to total loss . . . ."

We have reviewed the testimony of Drs. Greenhoot and Mahaley and find no support for the conclusion that plaintiff has suffered a 45 percent loss of use of her back and nothing more. Rather, the physicians indicate that an injury to plaintiff's spinal

cord has resulted in weakness *in all of her extremities*, and numbness or loss of sensation *throughout her body*. The doctors further testify that she has suffered diminished mobility and has "difficulty with position sense and with recognition of things in her hands when objects are placed in her hands." All of this testimony is uncontradicted. Under such circumstances the Commission may not limit plaintiff to an award under G.S. 97-31(23). The impairments described above are compensable under other sections or subsections of the Workmen's Compensation Act and are not subsumed under the provisions of subsection (23) which provides compensation only "for loss of use of the back." If the Commission determines plaintiff has suffered these impairments, as the uncontradicted evidence tends to show, the award must take into account these and all other compensable injuries resulting from the accident. "[T]he injured employee is entitled to an award which encompasses all injuries received in the accident." *Giles v. Tri-State Erectors*, 287 N.C. 219, 214 S.E. 2d 107 (1975).

For the reasons given, this case must be remanded to the Industrial Commission for further proceedings. However, because of the substantial likelihood that other questions will arise again during these further proceedings, we deem it appropriate to address certain matters raised by plaintiff's brief and by the opinion of the Court of Appeals.

[2]  Both the full Industrial Commission and the Court of Appeals overruled plaintiff's contention that she is entitled to benefits for total incapacity for work by referring to the testimony of Dr. Mahaley that "there are some gainful occupations that someone with [plaintiff's] degree of neurological problem could pursue," and to the absence of any testimony that she is totally disabled.

We first note that Dr. Mahaley's quoted statement is an oblique generality which sheds no light on plaintiff's capacity to earn wages. Uncontradicted evidence establishes that she is over fifty years of age, somewhat obese, has an eighth grade education, and at the time of her accident had been working as a laborer earning less than $2.00 per hour. The relevant inquiry under G.S. 97-29 is not whether all or some persons with plaintiff's degree of injury are capable of working and earning wages, but whether plaintiff herself has such capacity. In *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265 (1951), Justice Ervin, writing for the Court, noted: "While there seems to be no case on the specific point in this

State, courts in other jurisdictions hold with virtual uniformity that when an employee afflicted with a pre-existing disease or infirmity suffers a personal injury by accident arising out of and in the course of his employment, and such injury materially accelerates or aggravates the pre-existing disease or infirmity and thus proximately contributes to the death or disability of the employee, the injury is compensable, even though it would not have caused death or disability to a normal person." Similarly, if other pre-existing conditions such as an employee's age, education and work experience are such that an injury causes him a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the incapacity which he or she suffers, and not for the degree of disability which would be suffered by someone with superior education or work experience or who is younger or in better health. *See* A. Larson, *Workmen's Compensation* § 57.51, at nn. 96-97 (1976), and cases collected therein. Dr. Mahaley's testimony sheds no light on plaintiff's capacity to pursue gainful employment. Consequently his testimony affords no basis for the Commission to conclude plaintiff has not suffered total incapacity for work.

[3] Nor may plaintiff be denied benefits for total disability by reason of her failure thus far to present evidence that she is in fact totally disabled. In workmen's compensation cases a claimant generally bears the burden of proving the extent or degree of disability suffered. *Hall v. Chevrolet, Inc.,* 263 N.C. 569, 139 S.E. 2d 857 (1965). *Compare Larson, supra* § 57.61, at nn. 24-34 (1976). In the present case, however, the record shows that plaintiff sought to present her own testimony on this subject, but refrained from doing so when Deputy Commissioner Dandelake stated that her testimony would pertain to an uncontested issue and was unnecessary. Under G.S. 97-84 a party to workmen's compensation proceedings is afforded the right to testify and present such relevant evidence as he may choose. "[T]he determinative facts upon which the rights of the parties must be made to rest must be found . . . after all parties have been given full opportunity to be heard." *Biddix v. Rex Mills, Inc.,* 237 N.C. 660, 75 S.E. 2d 777 (1953). When a claimant refrains from presenting evidence in reliance on an inaccurate statement by a deputy commissioner that a certain matter is uncontested, the right guaranteed by G.S. 97-84 has been abridged and the claimant's failure to present such evidence may not be used against him. Accordingly, before the

Commission may determine that plaintiff is not entitled to compensation for permanent total disability, she must be afforded an opportunity to present evidence relevant to her capacity to work and earn wages.

[4]   We think it appropriate to emphasize again that the criterion for compensation in cases covered by G.S. 97-29 or -30 is the extent of the claimant's "incapacity for work." Here, the physicians' estimates of plaintiff's disability do not refer to the diminution of plaintiff's wage earning capacity because of her injury, but refer only to the degree of loss of use of her nervous system (Dr. Mahaley) or the impairment of her ability to carry out "total life functions" (Dr. Greenhoot). A person may be wholly incapable of working and earning wages even though her ability to carry out normal life functions has not been wholly destroyed and even though she has not lost 100 percent use of her nervous system. *See* cases collected in 99 C.J.S., Workmen's Compensation, § 295, n. 18 (Cum. Supp. 1978).

So the ultimate question remains: To what extent is plaintiff now able to earn, in the same or any other employment, the wages she was receiving at the time of her injury? If she is unable to work and earn *any* wages, she is totally disabled. G.S. 97-2(9). In that event, unless all her injuries are included in the schedule set out in G.S. 97-31, she is entitled to an award for permanent total disability under G.S. 97-29. If all her injuries are included in the schedule set out in G.S. 97-31, she is entitled to compensation exclusively under G.S. 97-31. This is true from the language of the statute itself. *See Watts v. Brewer,* 243 N.C. 422, 90 S.E. 2d 764 (1956); *Stanley v. Hyman-Michaels Co.,* 222 N.C. 257, 22 S.E. 2d 570 (1942). *Compare* Larson, supra, § 58.20, n. 34 *et seq.*

If she is able to work and earn *some* wages, but less than she was receiving at the time of her injury, she is partially disabled. G.S. 97-2(9). In that event she is entitled to an award under G.S. 97-31 for such of her injuries as are listed in that section, and to an additional award under G.S. 97-30 for the impairment of wage earning capacity which is caused by any injuries *not listed* in the schedule in G.S. 97-31. *See Morgan v. Norwood,* 211 N.C. 600, 601-02, 191 S.E. 345, 346 (1937). *See generally* W. Schneider, Workmen's Compensation Text § 2318 (1957).

[5]   By her fifth assignment of error plaintiff contends the Commission erred in its calculation of her average weekly wage. The

record shows that plaintiff and defendants entered into a stipulation that "the average weekly wage of the employee at the time of said injury, including overtime and all allowances, was $62.40." This stipulation was approved by the Commission and is binding absent a showing that "there has · been error due to fraud, misrepresentation, undue influence or mutual mistake . . . " G.S. 97-17; *Pruitt v. Knight Publishing Co.,* 289 N.C. 254, 221 S.E. 2d 355 (1976). No such showing or allegation has been made.

For the reasons given the judgment of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for remand to the Industrial Commission for further proceedings in accordance with this opinion.

Reversed and remanded.