The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner D. Bernard Alston. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of Conclusions of Law #2 and Award #1.
The Full Commission finds as fact and concludes as matters of law the following; which were entered into by the parties at the hearing as:
STIPULATIONS
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and the defendant-employer prior to and on May 27, 1992.
3. The defendant is insured by CIGNA.
4. Plaintiff was employed as an assembler at the defendant's plant at the time of her injury.
5. The plaintiff sustained a compensable injury on May 27, 1992.
6. Plaintiff's average weekly wage for the year immediately preceding May 27, 1992 was $274.00.
7. The plaintiff's compensation rate is $182.68.
8. Plaintiff is entitled to continuing total disability benefits from CIGNA until her period of disability ends.
9. The parties also stipulated that the medical records of Dr. Nelson Garner, Dr. Anthony J. DeFranzo, Dr. Gary G. Poehling, Dr. Kyle Jackson, Dr. Lorraine Arias, Dr. Mohammad Athar, Dr. Adrian Griffin, and Dr. Elizabeth Meyerdierks may be accepted as substantive evidence in this case.
10. The sole issue to be decided by the Industrial Commission is that of whether plaintiff is entitled to stop looking for employment.
*****************
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Mrs. Linda F. Burton is a 45-year-old woman with a seventh grade education, who has completed her GED. Prior to her injury on May 27, 1992, the plaintiff had been a production line worker for her entire adult life.
2. The plaintiff was working as an assembler at defendant's plant on May 27, 1992 when her supervisor ordered her to hold back a machine-driven conveyor belt so that he could assist an injured employee. When the plaintiff tried to hold back the conveyor belt, she felt her left wrist and elbow pop. Her wrist and elbow swelled.
3. The plaintiff was treated that day by the company doctor, Dr. Nelson Garner, and returned to work with the restriction of no left arm duty for 10 days. Dr. Garner examined the plaintiff again on May 29 and found that the plaintiff's wrist was still sore and stiff. He continued her on her right-arm only restrictions.
4. The plaintiff returned to Dr. Garner on June 5, 1992, complaining that her right wrist was hurting because she had been using it full-time at work. He returned her to work with only light duty for her right hand.
5. The defendant-employer put plaintiff back to work using both of her hands to assemble products. On June 12, 1992, Dr. Garner examined the plaintiff and observed that she was suffering from severe bilateral carpal tunnel syndrome, which needed surgery. He ordered her to stay out of work indefinitely and referred her to a hand specialist, neurologist, Anthony J. DeFranzo at Bowman Gray Hospital School of Medicine.
6. After unsuccessful attempts to treat the plaintiff conservatively, Dr. DeFranzo operated on the plaintiff's left wrist on August 10, 1992 and on her right wrist on September 21, 1992.
7. Dr. DeFranzo found on his examination of the plaintiff on October 27, 1992, that the plaintiff was still having problems with her left elbow as a result of the initial injury at work.
8. Dr. DeFranzo released the plaintiff for non-repetitive work only on October 27, 1992. The defendant-employer wrote to Dr. DeFranzo on November 12, 1992 informing him that the company had no non-repetitive jobs.
9. Dr. DeFranzo referred the plaintiff to The Hand and Microsurgery Center for evaluation and treatment. Upon her initial evaluation in August of 1993, the plaintiff complained that her hands were tingling at night, she was dropping things, her hands were sensitive to cold, her hands swelled and sweated, and that her left elbow "catches and hurts."
10. The evaluation showed that the plaintiff had suffered a "significant loss of strength in both her hands" and that she had problems with significant cold intolerance, numbness, tingling and weakness in her hands, causing her to drop things. Dr. DeFranzo and the doctors at the Pain Clinic found that the plaintiff continued to experience pain and loss of range of motion in her left elbow. Dr. DeFranzo gave her a final disability rating of 25 percent in her right and left upper extremities based upon the weakness of her hands, the continued symptoms of numbness and tingling, and the loss of range of motion in her left elbow, left and right wrists, and left forearm.
11. Dr. DeFranzo released the plaintiff for only light duty work with a weight limitation of lifting 10 pounds occasionally and no type of repetitive work or assembly line work.
12. Defendant-employer did not have any jobs which plaintiff could perform within her restrictions.
13. In February 1994 plaintiff began vocational rehabilitation activities with the assistance of Kim Logan, a vocational rehabilitation specialist retained by defendant-carrier.
14. The plaintiff has been searching for a job for seventeen months without success. The plaintiff has applied for over 100 jobs with over 28 employers in the Surry County region. She has applied for jobs in sales, industry, and being a hostess. She has applied for every job Ms. Logan sent her to and has applied for work at employers which the plaintiff discovered on her own. There is not a job available in Surry County, within her education and physical limitations, for which the plaintiff has not applied. Although jobs in general are available in Surry County, the plaintiff has not received a single job offer, nor has she been given any hope that a job will become available for her.
15. The plaintiff underwent a psychiatric evaluation in July 1994 by Dr. Adrian Griffin. The plaintiff informed Dr. Griffin that due to her pain, she was having trouble with her temper. Her emotional state and the resulting problems with controlling her temper had a negative impact on familial relationships and contributed to the plaintiff's husband filing divorce proceedings against the plaintiff.
16. The plaintiff has a depressed mood which has been present for two years since her injury at work. In addition, the plaintiff has low energy, low self-esteem, difficulty in concentration and making decisions, feelings of hopelessness and sleep difficulties. The plaintiff has dysthymia with a poor prognosis.
17. The plaintiff retains a 25 percent permanent partial impairment to her right upper extremity and a 25 percent permanent partial impairment to her left upper extremity.
*****************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On May 27, 1992, plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant Hamilton Beach/Proctor Silex. N.C. Gen. Stat. § 97-2
(6).
2. As a result of her compensable injury, plaintiff is entitled to receive temporary total disability from 12 June 1992 and continuing at a rate of $182.68 per week. N.C.G.S. § 97-27.
3. As a result of the compensable injury, plaintiff retains a 25 percent permanent disability to both her upper extremities and is restricted from lifting more than 10 pounds occasionally and from doing repetitive work.
4. The plaintiff is not capable of returning to her former employment or her former wages. Kennedy v. Duke UniversityMedical Center, 101 N.C. App. 24, 398 S.E.2d 677 (1990).
5. The defendants have failed to offer evidence that plaintiff is capable of earning wages by offering evidence that she was capable of obtaining a suitable job, Kennedy v. DukeUniversity Medical Center, 101 N.C. App. 24, 398 S.E.2d 677
(1990). (citing Bridges v. Linn-Corriher, 90 N.C. App. 397,400-01, 368 S.E.2d 388, 391 (1988)), or that plaintiff is capable of earning a wage. Little v. Anderson County Schools, 295 N.C. 527,246 S.E.2d 743 (1978).
6. The plaintiff has engaged in a reasonable but unsuccessful search for work and has proven that she is totally disabled. The plaintiff is not required to engage in the meaningless exercise of seeking a job which does not exist or work in a sheltered workshop environment. Peoples v. Cone Mills Corp.,316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986) (cited with approval in Lackey v. R.I. Stone Mills, Inc., 106 N.C. App. 658,418 S.E.2d 517 (1992)), N.C. Gen. Stat. § 97-29.
7. The plaintiff is entitled to medical compensation for treatment arising from her injury to the extent that the treatment tends to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
*****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the followings:
AWARD
1. The defendant shall pay plaintiff temporary total disability benefits from 12 June 1992 and continuing at the rate of $182.68 per week.
2. The plaintiff is entitled to and is hereby authorized to stop her job search.
3. The defendant shall pay all medical expenses incurred by plaintiff for treatment of the injuries to her arms, and all related travel expenses and prescription medications, when bills for the same have been submitted to and approved by the Industrial Commission.
4. The plaintiff's attorney shall be entitled to a fee of 25 percent of the compensation awarded herein, which amount shall be paid by defendants by sending every fourth check directly to counsel for the plaintiff.
5. The defendants shall pay the costs.
 S/ _____________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ LAURA K. MAVRETIC COMMISSIONER
CMV/cnp/rst