IN THE SUPREME COURT OF NORTH CAROLINA

No. 130PA23

Filed 13 December 2024

MARTIN B. STURDIVANT, Employee

v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Employer, SELF-INSURED (CCMSI, Third-Party Administrator)

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of a divided panel of the Court of Appeals, 288 N.C. App. 470 (2023), affirming an opinion and award entered on 28 February 2022 by the North Carolina Industrial Commission. On 13 December 2023, the Supreme Court allowed plaintiff's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court on 24 September 2024.

*Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson, for plaintiff-appellee/appellant.*

*Joshua H. Stein, Attorney General, by Lindsay Vance Smith, Deputy Solicitor General; Ryan Y. Park, Solicitor General; J. D. Prather, Special Deputy Attorney General; Heather A. Haney, Special Deputy Attorney General; and Marc D. Brunton, General Counsel Fellow, for defendant-appellant/appellee.*

*Lennon Camak & Bertics, PLLC, by Michael W. Bertics; and The Harper Law Firm, PLLC, by Richard B. Harper and Joshua O. Harper, for North Carolina Advocates for Justice, amicus curiae.*

*Brewer Defense Group, by Joy H. Brewer and Ginny P. Lanier; and Nelson Mullins Riley & Scarborough, LLP, by Andrew Heath, for North Carolina Association of Self-Insurers, North Carolina Forestry Association, North Carolina Retail Merchants Association, North Carolina Home Builders Association, American Property Casualty Insurance Association, and North Carolina Chamber Legal Institute, amici curiae.*

DIETZ, Justice.

In 2011, the General Assembly amended our workers' compensation laws with the stated aim of putting people back to work. The amendment ended an employee's temporary total disability payments after 500 weeks unless the employee had sustained a "total loss of wage-earning capacity." Protecting and Putting North Carolina Back to Work Act, S.L. 2011-287, § 10, 2011 N.C. Sess. Laws 1087, 1094.

After the Court of Appeals in this case interpreted the phrase "total loss of wage-earning capacity" in a manner inconsistent with its plain meaning, the General Assembly amended the law again to clarify that total loss of wage-earning capacity means "the complete elimination of the capacity to earn any wages." Current Operations Appropriations Act of 2023, S.L. 2023-134, § 31.3.

That clarification controls in cases going forward, but its impact on this case (and other cases pending at the time) led us to allow discretionary review. As explained below, the General Assembly's clarification was not necessary because it reflects what the statute's plain language meant all along: "total loss of wage-earning capacity" in the 2011 amendment means the total loss of the employee's personal capacity to earn wages in any type of employment. We therefore modify the Court of Appeals opinion to reject that court's erroneous statutory interpretation but otherwise affirm the court's decision.

**Facts and Procedural History**

The facts of plaintiff Martin Sturdivant's underlying workplace injury are not

particularly relevant to the legal issues in this case. No one in this case disputes that Sturdivant is an honest, hard-working person who spent most of his adult life employed in jobs ranging from drywall laborer to poultry farm hand to industrial machine operator.

In 2007, Sturdivant took a job as a corrections officer at the North Carolina Department of Public Safety. Several years later, Sturdivant injured his back on the job. The State agreed to accept responsibility for Sturdivant's workplace injury and paid temporary total disability payments though the workers' compensation system. To this day, Sturdivant still suffers from chronic back pain and that pain becomes severe roughly one day each week.

When our State created its workers' compensation system in the 1920s, the law contained a provision limiting injured employees' temporary total disability payments to 400 weeks. *See* The North Carolina Workmen's Compensation Act, ch. 120, § 29, 1929 N.C. Pub. Laws 117, 129.

In the early 1970s, the General Assembly removed that limitation. *See* An Act to Amend the Workmen's Compensation Act Regarding the Duration of Benefits, ch. 1308, § 1, 1973 N.C. Sess. Laws (2d Sess. 1974) 609, 609. As a result, for much of the last fifty years, an employee who suffered a temporary total disability as defined in the statutes could receive benefits indefinitely.

Over time, concern grew that our state's extended disability benefits hurt the ability to attract and retain businesses in the state. As one legislator explained in

committee hearings contemplating further amendments, "North Carolina hurts its ability to compete by turning our workers' comp system into a retirement system." *Workers' Compensation: Putting North Carolina Back to Work*, *Hearing on H.B. 709 Before the S. Comm. on Insurance*, 2011-2012 Sess. 338 (N.C. 2011).

Ultimately, in 2011, the General Assembly enacted a new law titled the "An Act Protecting and Putting North Carolina Back to Work by Reforming the Workers' Compensation Act." *See* S.L. 2011-287. The act amended N.C.G.S. § 97-29 to create a 500-week limit on temporary total disability benefits. *Id.* § 10. After 500 weeks, an employee could receive "extended compensation" only if the employee could "prove by a preponderance of the evidence that the employee has sustained a total loss of wage-earning capacity." *Id.*

In 2020, as Sturdivant approached 500 weeks of total temporary disability payments, he applied for extended compensation under N.C.G.S. § 97-29(c). The Industrial Commission rejected his claim, concluding that Sturdivant had not sustained a "total loss of wage-earning capacity" as required by the statute. In reaching this decision, the Commission interpreted "total loss of wage-earning capacity" to mean "a total loss of the ability to earn wages in any employment."

Sturdivant appealed the Industrial Commission's opinion and award to the Court of Appeals. The Court of Appeals rejected the Commission's interpretation of section 97-29(c) and held that the phrase "total loss of wage-earning capacity" was synonymous with "total disability" and thus incorporated a long line of court-created

legal tests that went beyond merely assessing whether the employee had the ability to earn wages in any employment. *Sturdivant v. N.C. Dep't of Pub. Safety*, 288 N.C. App. 470, 474–75 (2023).

The remaining portion of the Court of Appeals opinion was quite fractured. The authoring judge held that Sturdivant was not entitled to extended benefits under section 97-29(c) because Sturdivant failed to show that he sustained a "total disability." *Id.* at 476–79 (Dillon, J.). A second judge concurred "in result only" without explaining the portions of the lead opinion with which the judge agreed or disagreed. *Id.* at 480 (Stroud, J., concurring in result only). A third judge dissented from the "total disability" analysis, reasoning that "the Commission did not make specific findings of fact as to 'the crucial questions necessary to support a conclusion' as to whether Plaintiff remains totally disabled so as to qualify for extended benefits." *Id.* at 482 (Hampson, J., concurring in part and dissenting in part).

The State filed a petition for discretionary review of the Court of Appeals' first holding, seeking review of whether the Court of Appeals erred "in its interpretation of the legal standard to be applied under Section 97-29(c) of the North Carolina Workers' Compensation Act." Sturdivant filed a response containing a conditional petition for discretionary review of the Court of Appeals' second holding, seeking review of whether the Industrial Commission's findings were supported by the record and whether the matter should be "remanded for findings of fact to be made based on

the correct application of the law." This Court allowed both petitions.[1]

After the parties filed their petitions for discretionary review, the General Assembly again amended N.C.G.S. § 97-29(c), this time to "clarify, in response to Sturdivant v. N. Carolina Dep't of Pub. Safety, 887 S.E.2d 85 (N.C. Ct. App. 2023), that an employee has a different standard for establishing the burden of proof for extended compensation pursuant to G.S. 97-29(c) to reflect the intent of the General Assembly when it enacted S.L. 2011-287." S.L. 2023-134, § 31.3(b).

The new amendment states that, for purposes of N.C.G.S. § 97-29(c), "the term 'total loss of wage-earning capacity' shall mean the complete elimination of the capacity to earn any wages." *Id.* § 31.3(a). The amendment further emphasized that the term "disability" as defined by N.C.G.S. § 97-2(9) "shall not apply to this provision." *Id.*

## Analysis

### I.   Interpretation of "total loss of wage-earning capacity"

The heart of this appeal is the meaning of the phrase "total loss of wage-

---

[1] Both Sturdivant and his supporting amicus now assert that we should dismiss this appeal because the case is moot. It is not. "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison Cnty. Realtors Ass'n*, 344 N.C. 394, 398–99 (1996). Sturdivant and his supporting amicus contend that he "has already lost under the Court of Appeals' standard" and "stands to gain no ground through this appeal." That is wrong. If we were to reject the State's arguments and agree with Sturdivant's argument, he would receive a remand to the Industrial Commission where he might win relief that he previously lost at every earlier stage of this appeal. That is as live a controversy as can exist in the law. *See In re A.K.*, 360 N.C. 449, 452–53 (2006).

earning capacity" in a 2011 statutory enactment titled "An Act Protecting and Putting North Carolina Back to Work by Reforming the Workers' Compensation Act." *See* S.L. 2011-287, § 10. Throughout this case, the parties and the lower courts have arrived at starkly different interpretations of this statute's meaning. Statutory interpretation is a legal question that we review de novo. *JVC Enters. v. City of Concord*, 376 N.C. 782, 785 (2021). We therefore begin our analysis by engaging in our own interpretation of the statute.

The goal of statutory construction is to carry out the intent of the legislature. *Wynn v. Frederick*, 385 N.C. 576, 581 (2023). When construing a statute, we first examine "the plain words of the statute" because the text of the statute is "the best indicia of legislative intent." *Id.* (cleaned up). "If the plain language of the statute is unambiguous, we apply the statute as written." *Id.* (cleaned up). "If the plain language of the statute is ambiguous, however, we then look to other methods of statutory construction such as the broader statutory context, the structure of the statute, and certain canons of statutory construction to ascertain the legislature's intent." *Id.* (cleaned up).

The Industrial Commission determined that the statute's text was plain and unambiguous and that the phrase "total loss of wage-earning capacity" means "a total loss of the ability to earn wages in any employment." This is a sound analysis. After all, the words in this phrase are not unusual or technical. "Total" means entire, complete, absolute, or utter. *Total*, *Merriam-Webster's Collegiate Dictionary* (11th ed.

2007). "Loss" means the deterioration, destruction, separation, or absence of something. *Loss*, *Merriam-Webster*. Capacity means the mental or physical ability to do something. *Capacity*, *Merriam-Webster*.

Combining these definitions, then, the ordinary English meaning of the phrase "total loss of wage-earning capacity" is an employee's complete or utter loss of the ability to earn any wages by working.

Moreover, the phrase is part of a larger provision requiring the employee to prove "by a preponderance of the evidence that the employee *has sustained* a total loss of wage-earning capacity." N.C.G.S. § 97-29(c) (2022) (emphasis added); *id.* § 97-29(c) (2023). In this context, "sustain" means to "suffer" or "undergo" a condition, typically an unpleasant one such as an injury. *Sustain*, *Merriam-Webster*. This confirms that the "loss of wage-earning capacity" is focused on the employee's personal capacity to earn wages as a consequence of a workplace injury, detached from the economic environment that exists at the time and from the willingness of employers to extend a job offer. In other words, the employee's "wage-earning capacity" in this context concerns the capacity of the employee to do wage-earning work, not the likelihood of actually finding a job.

This interpretation is further confirmed by another portion of the act's text— its title. "Even when the language of a statute is plain, the title of an act should be considered in ascertaining the intent of the legislature." *State v. James*, 371 N.C. 77, 87 (2018) (cleaned up). Here, the title of the act confirms the plain meaning of its text.

The act is titled "An Act Protecting and Putting North Carolina Back to Work by Reforming the Workers' Compensation Act." This title indicates that a key purpose of the act is to reform the workers' compensation system to get people back into the job market.

To carry out this intent, the text of the act limits temporary disability compensation to 500 weeks and provides that, after that time, an employee can receive "extended compensation" only if the employee's injury caused a total loss of wage-earning capacity. The title indicates that, after 500 weeks of compensation, if an employee is capable of reentering the job market—that is, has the capacity to do so—the General Assembly intended for workers' compensation benefits to end regardless of whether the employee found a job. Were this Court to interpret the statute otherwise, it would not be reforming workers' compensation to put North Carolina back to work; it would be cementing the existing system in which employees with a temporary total disability too often received permanent benefits. Accordingly, we hold that the plain text of "total loss of wage-earning capacity" means the total loss of the employee's personal capacity to earn wages through any type of employment.

Finally, the lack of a statutory definition for "total loss of wage-earning capacity" itself confirms that the phrase has its plain and ordinary meaning. The Workers' Compensation Act is complex. Because of that complexity, many words and phrases that have an ordinary English meaning are given more specialized

definitions in the Act. For example, the terms "employee," "injury," "disability," and "compensation" all have specialized definitions in the Act. N.C.G.S. § 97-2(2), (6), (9) & (11) (2023). The General Assembly used all of these specially defined terms in the 2011 amendment. S.L. 2011-287, § 10. If the General Assembly had intended to give the phrase "loss of wage-earning capacity" a specialized meaning as well, it could have done so. It did not. This further demonstrates that the phrase should be given its plain meaning. *Cf. In re Clayton-Marcus Co., Inc.*, 286 N.C. 215, 219–20 (1974).

In sum, when the Industrial Commission interpreted the phrase "total loss of wage-earning capacity," it did so correctly. The Commission properly concluded that the phrase means an employee's "total loss of the ability to earn wages in any employment."

Why, then, did the Court of Appeals reject the Commission's statutory analysis? The answer lies in the way in which our appellate courts analyze and discuss workers' compensation cases.

As noted above, many of the key terms in the Workers' Compensation Act are defined terms with specialized meaning. Among those terms is "disability." N.C.G.S. § 97-2(9). The Act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." *Id.* This definition has existed since the Workers' Compensation Act's inception in 1929. *Medlin v. Weaver Cooke Constr., LLC*, 367 N.C. 414, 420 (2014).

Over the years, this Court and the Court of Appeals have been repeatedly called on to interpret the meaning of this statutory definition of "disability." *See, e.g.*, *id.* at 419–22. In doing so, our opinions did not always repeat this full statutory wording over and over—after all, our opinions are long enough as it is.

Instead, we have often used shorthand references to describe the statutory definition. One such reference that appears in a handful of our cases over the years is the phrase "loss of wage-earning capacity." *See, e.g.*, *Wilkes v. City of Greenville*, 369 N.C. 730, 745 (2017). We have used this phrase as a substitute for the full definition of the term "disability" when repeatedly referencing that definition in our analysis. *Id.*

But importantly, we have also used many other, similar shorthand references. These include "incapacity to earn wages," "loss of wage-earning power," and "incapacity for work." *See Morrison v. Burlington Indus.*, 304 N.C. 1, 11, 13 (1981); *Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 105 (2000); *Little v. Anson Cnty. Schs. Food Serv.*, 295 N.C. 527, 532–33 (1978).

None of these phrases carries any talismanic power to change the ordinary meaning of words in the Workers' Compensation Act. Yet that is precisely what the Court of Appeals in this case believed. The court noted that this Court "uses the phrase 'loss of wage-earning capacity' synonymously with 'disability.'" *Sturdivant*, 288 N.C. App. at 475. Thus, the court reasoned, the phrase "loss of wage-earning capacity" in the statute must share the same legal meaning with the defined statutory

term "disability" and all its years of case-law development.

This analysis fails for two reasons. First, the Court of Appeals' belief that this Court treats "loss of wage-earning capacity" synonymously with "disability" is simply wrong—we have never held those terms synonymous. The term "disability" is a legal term of art created by the General Assembly with specialized meaning in the context of workers' compensation. *See* N.C.G.S. § 97-2(9); *Gregory v. W.A. Brown & Sons*, 363 N.C. 750, 763 n.1 (2010). Phrases like "loss of wage-earning capacity" and "incapacity to earn wages," by contrast, are simply language this Court uses when assessing how that defined term applies to the facts of a particular case.

Moreover, the Court of Appeals' reasoning ignores *why* our statutes so often include defined terms. The legislature defines terms in statutes so that those definitions can then be used in place of repeated, lengthy explanations of the term's meaning. *See Unemployment Comp. Comm'n v. Jefferson Standard Life Ins. Co.*, 215 N.C. 479, 486–87 (1939). This allows a statutory scheme such as the Workers' Compensation Act to remain as clear and concise as possible by condensing complicated technical meanings into defined terms.

By contrast, when this Court analyzes the meaning of those same terms, we do the opposite. We unpack the defined term and thoroughly analyze the full meaning as set out in the statutory definition. *See, e.g.*, *Medlin*, 367 N.C. at 420–23.

The important point here is that, unlike this Court, the General Assembly does not interpret laws. It writes them. When doing so, it would be quite abnormal for the

General Assembly to define a term and then decline to use that definition, instead opting for an entirely different phrase that it nevertheless intended to convey the same precise, technical meaning of the term it chose to define. Doing so undermines the very reason that the General Assembly would add a statutory definition in the first place.

This is particularly true here because the 2011 amendment used the defined term "disability" repeatedly in the changes and additions to N.C.G.S. § 97-29, but then chose *not* to use that same term in the key portion of N.C.G.S. § 97-29(c) at issue in this case. The 2011 amendment first rewrote subsection (a) to begin with the new phrase: "When an employee *qualifies for total disability.* . . ." *See* S.L. 2011-287, § 10 (emphasis added). Then, in the newly added subsection (b), which applies to the first 500 weeks of workers' compensation, the amendment again uses the terms "disability" and "total disability" to describe the applicable standard for receiving compensation. *Id.*

Finally, even in subsection (c) itself, the amendment uses the term "disability" as it describes the difference between the initial 500-week period and the period that comes after: "An employee may qualify for extended compensation in excess of the 500-week limitation on *temporary total disability* as described in subsection (b) of this section only if . . . the employee has sustained *a total loss of wage-earning capacity*." *Id.* (emphasis added).

Simply put, the General Assembly chose *not* to use the term "total disability"

in the key portion of subsection (c) although it used that defined term even in that same sentence. Instead, the General Assembly used a different term. It is a long-standing rule of statutory construction "that a change in phraseology when dealing with a subject raises a presumption of a change of meaning." *Latham v. Latham*, 178 N.C. 12, 14 (1919). Here, in light of the glaring change from the use of the defined term "total disability" over and over in the amendment to the entirely new term "total loss of wage-earning capacity," it is simply unreasonable to interpret the latter as synonymous with the former. *Id.*

In sum, we reject the Court of Appeals' interpretation of N.C.G.S. § 97-29(c) in this case. The phrase "total loss of wage-earning capacity" does not share the same legal meaning as the term "total disability" and all its years of case-law development. Instead, as the Industrial Commission properly concluded, the phrase means the total loss of the employee's personal ability to earn wages in any type of employment.

Finally, as we conclude this statutory analysis, we cannot ignore that the General Assembly amended N.C.G.S. § 97-29(c) in response to the Court of Appeals' ruling in this case. In that amendment, the legislature explained that, for purposes of N.C.G.S. § 97-29(c), "the term 'total loss of wage-earning capacity' shall mean the complete elimination of the capacity to earn any wages." S.L. 2023-134, § 31.3(a). The amendment further emphasized that "disability" as defined by N.C.G.S. § 97-2(9) "shall not apply to this provision." *Id.* The General Assembly also stated that it was amending the statute "to clarify" the existing law, directly in response to the Court of

Appeals decision in this case. *Id.* § 31.3(b).

For the reasons explained above, this clarification did not change the meaning of the provision. The term "total loss of wage-earning capacity" in the 2011 version of the statute already meant what the 2023 amendment now says. Accordingly, we need not address whether the 2023 amendment was a "clarifying" amendment as that term is described in our case law. *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 8–12 (2012). Because the plain meaning of both amendments is the same, there is nothing to clarify.

## II.    Application of N.C.G.S. § 97-29(c) in this case

In addition to reviewing the Court of Appeals' interpretation of N.C.G.S. § 97-29(c), we also allowed discretionary review in this case to consider Sturdivant's argument that the case should be remanded because the Industrial Commission improperly applied the standard for evaluating total loss of wage-earning capacity.

In its opinion and award, the Industrial Commission described various testimony and evidence that it received with respect to Sturdivant's workplace injury, physical and mental limitations, education, vocational skills, and work experience. Based on this evidence, the Industrial Commission found that, given Sturdivant's "work history, his educational level—high school with some community college experience—transferable skills, communication skills, restrictions, and chronic low back pain," Sturdivant "would be able to obtain some employment, at a minimum, part-time work in a sedentary position." The Commission therefore concluded that

Sturdivant "failed to meet his burden to establish by the preponderance of the evidence that he has experienced a total loss of wage-earning capacity" because he "has the capacity to earn wages."

Sturdivant contends that the Commission, in reaching this conclusion, discussed evidence that should not be considered in assessing total loss of wage-earning capacity. First, Sturdivant points to the testimony of his medical providers, who explained that some of their patients with similar chronic back pain conditions were able to find employment. Sturdivant contends that this testimony was impermissible because the Commission cannot rely on "the oblique generality 'that at least some of [their] patients with conditions similar to [Sturdivant's] condition have been able to return to work.'" To support this argument, Sturdivant relies on decisions from this Court that rejected these sorts of generalities when assessing "disability" as that term is defined in N.C.G.S. § 97-2(9). *See Little*, 295 N.C. at 531.

As explained at length above, the General Assembly chose not to incorporate the "disability" legal doctrine into N.C.G.S. § 97-29(c) and instead applied a new standard examining whether the employee sustained a complete loss of the ability to earn any wages in any type of employment. Under this new standard, evidence that similarly situated people are capable of earning wages through employment is a permissible factor for the Commission to consider in making its findings and conclusions.

Sturdivant also argues that there was insufficient evidence to support the

Commission's finding that, despite Sturdivant's severe chronic back pain which occurs "approximately once per week," Sturdivant "retains some wage earning capacity on days where his pain is less severe" and was therefore capable of "some employment, at a minimum, part-time work in a sedentary position."

We hold that there was competent evidence to support this finding. As noted above, Sturdivant's physicians testified that other patients with similar conditions were able to return to work. Moreover, Sturdivant's employer presented expert testimony from a vocational rehabilitation specialist who opined that there was part-time work Sturdivant could perform even with his need for "greater scheduling flexibility" because of his back pain.[2] This is competent evidence to support the Commission's finding that Sturdivant was capable of some part-time work. Accordingly, we hold that the Industrial Commission's findings of fact are supported by competent evidence and those findings, in turn, support the Commission's corresponding conclusions of law.

## Conclusion

The Court of Appeals was correct to affirm the Industrial Commission's opinion and award but erred when it interpreted the phrase "total loss of wage-earning capacity" in N.C.G.S. § 97-29(c) as synonymous with "total disability." We reject that

---

[2] Sturdivant also contends that this expert's testimony was inadmissible under Rule 702(a) of the Rules of Evidence. *See* N.C.G.S. § 8C-1, Rule 702(a) (2023). As the Court of Appeals decision observed, this issue is not preserved for appellate review because Sturdivant did not object to this testimony. *Sturdivant*, 288 N.C. App. at 478. The Industrial Commission also expressly noted the lack of any objection in its opinion and award.

interpretation for the reasons explained above but otherwise affirm the decision of

the Court of Appeals.

MODIFIED AND AFFIRMED.